**Snyder HOWELL, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 85–1078.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1985.

Decided Oct. 31, 1985.

Rehearing Denied Nov. 26, 1985.

Thomas J. Wolf, Jr., P.C., Harrisburg, Ill., for plaintiff-appellant.

John A. Dudeck, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

An employer that establishes a pension plan for its employees sometimes contributes funds to the plan on top of the employees' stated salaries. These are "employers' contributions" and are not taxable income for the employee until the plan pays benefits to the employee. 26 U.S.C. §§ 401(a), 403, 501(a). The employer alternatively may give the employees higher stated salaries but dedicate some of the salaries to the pension plan. These deductions are "employees' contributions" and are taxable income to the employee, but corresponding amounts of pension disbursements will not be taxed. 26 U.S.C. §§ 72, 402.

The distinction between "employers' contributions" and "employees' contributions" to qualified pension plans is almost wholly nominal. It is a matter of indifference to an employer whether it pays $30,000 salary to the employee plus $3,000 to a pension plan on the employee's behalf, or instead $33,000 to the employee, of which it sends $3,000 to a pension plan. In either event the employee receives $30,000 at once and $3,000 in deferred compensation, and the employer may deduct the whole $33,000 as an ordinary and necessary business expense. 26 U.S.C. § 404. But the tax consequences of the distinction are substantial. The tax on employers' contributions is deferred until retirement, and the discounted present value of the deferred tax is less than the value of tax paid today.

The distinction between employers' and employees' contributions is one example of the dominance of form over substance in the tax code. Perhaps aware that there was no substance—but substantial conse-

quences for the revenue—in this distinction, Congress allowed governmental bodies (but not private employers) to select still a third label. A section added in 1974, 26 U.S.C. § 414(h)(2), provides that if a state or local government's contributions "are designated as employee contributions but [the] employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions."

This statute might be read to require a state to "pick up" the contributions by assuming them, topping up the total compensation so that the employee then receives his full stated salary without a deduction for pensions. There is some support for such a view in the conference report, which describes a "pick up" plan as one "where the contribution is paid by the government, with no withholding from the employee's salary ..." H.R.Conf.Rep. 93–1280, 93d Cong., 2d Sess. 279 (1974), U.S. Code Cong. & Admin.News 1974, pp. 4639, 5038, 5060. But a requirement that there be "no withholding" from the salary would be the same thing as traditional "employers' contributions." The Internal Revenue Service therefore has treated § 414(h)(2) as an extension of the nominalism from which it grew. See Rev.Rul. 81–35, 1981–1 Cum. Bull. 255; Rev.Rul. 81–36, 1981–1 Cum. Bull. 256; Rev.Rul. 77–462, 1977–2 Cum. Bull. 358.

Under the Commissioner's interpretation § 414(h)(2) permits a government to treat contributions as "employees' contributions" for its own purposes but "employers' contributions" for purposes of federal income taxation. The government establishes two "salaries." One, for state purposes, is the base from which contributions are withheld; the other, for federal purposes, is a lower salary from which nothing is withheld; the difference between the salary for state purposes and the salary for federal purposes is the "picked up" contribution. In order to use this option, a government announces that the employees' contributions have been "picked up" and reduces their salaries—or more accurately the amounts shown as wages on their W–2 forms. So long as the employer forecloses the employees' "option of choosing to receive the contributed amounts directly instead of having them paid by the employer to the pension plan" (Rev.Rul. 81–35, 1981 Cum.Bull. 255), it meets the requirements of § 414(h)(2).*

In 1980 Illinois enacted a statute providing that after January 1, 1981, each governmental unit "may pick up the employee contributions required" by the state's pension laws. Ill.Rev.Stat. ch. 108½ § 18–133.1. The Commissioner then issued a private letter ruling that contributions "picked up" by the state after December 31, 1981, and paid to the retirement system would not be includable in the employees' gross income. See CCH *Private Letter Rulings*, Ltr. 8209038 (Dec. 4, 1981).

Snyder Howell, a circuit judge in Williamson County, Illinois, is covered by the Judges' Retirement System of Illinois. Some of each circuit judge's salary is withheld and turned over to the system; the exact amount withheld depends on whether the judge is contributing to a fund for spouses' benefits. Judge Howell's contribution was 11% of his salary. For purposes of state law, the contributions are employees' contributions. (The parties have not told us why, but the salaries of Illinois judges are protected against diminution during their terms in office, and the adoption of employees' contributions may have been a method of establishing a pension plan without a nominal reduction in the judges' salary or an increase in the net payments made by the state.) Beginning in 1982, the Comptroller of Illinois issued Howell and other judges W–2 forms show-

---

* Whether the state must pass a statute, as opposed to using some other process of reducing wages and "picking up" contributions that is adequate for the purpose under state law, we need not decide. We also do not decide whether the Commissioner's definition of a "pick up" is the only one he could have chosen. The IRS has discretion to interpret ambiguous terms, and the interpretation the Commissioner has placed on § 414(h)(2) is highly favorable to taxpayers. Perhaps he could have been more stingy; we need not say.

ing a lower taxable salary; the Comptroller reduced Howell's stated salary by the 11% contribution made to the Retirement System. The state did not make any other change in Howell's compensation. Only the taxable wage reported to the IRS changed. As a result, the state withheld less tax from Howell's check.

Judge Howell then filed amended tax returns for 1978–80. He claimed a refund for taxes paid on the sums that had been withheld from his pay and turned over to the Retirement System. These sums, he maintained, had been "picked up" by the state fully as much as the sums turned over to the Retirement System starting in 1982. There was no substantive difference and therefore, he maintained, there should be no tax difference. The IRS denied the request, and Howell filed this suit. The suit is financed by the Illinois Judges Association, whose members have an interest in common with Judge Howell.

The district court concluded that the pension contributions before 1982 were "employees' contributions" within the meaning of federal law. State law designated them this way, and under federal law the employer's designation controls. The proviso allowing employers to "pick up" employees' contributions gives them a way to reverse the effect of their own designation, but they must avail themselves of the privilege. Illinois did not do so until 1982, so Howell lost. We agree with both the result and the reasoning.

■ The starting point for income taxation is that all sums paid to, or on behalf of, an employee are taxable income. 26 U.S.C. § 61. If Illinois were to send money directly to Judge Howell's cousin on his behalf, the money would be Howell's income even though he never saw it; if the state put gold coins in a safe deposit box for safekeeping until his retirement, this also would be Howell's income. That the employee never gets the use of the money, or that the use is deferred, does not override the general principle that the full compensation for services rendered—no matter to whom paid, or when—is income immedi-

ately taxable to the person who earned the money. See *United States v. Basye*, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973) (payments to a pension plan are taxable when they vest even though not for the account of a particular person); *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 214, 74 L.Ed. 731 (1930) (anticipatory assignments of income do not reduce taxable income). Money paid to a retirement plan is money earned; that the employee has no control of the amount or the purpose to which it is devoted is an irrelevant detail. E.g., *Hogan v. United States*, 513 F.2d 170 (6th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 55 (1975) (amounts involuntarily paid to the federal civil service retirement plan are taxable income); *Zwiener v. CIR*, 743 F.2d 273 (5th Cir.1984) (same for a state plan).

■ It would not have mattered in *Lucas v. Earl*, which held that the employee must pay tax on 100% of his salary even though he had irrevocably assigned 50% of it to someone else, if the employer had "reduced" the salary by 50% and "contributed" an identical amount to the other party. The matching contribution would still be compensation for services rendered, and therefore income. So, too, is any contribution to a pension plan. It therefore does not matter whether a contribution on an employee's behalf is designated as an "employer's contribution"—not unless Congress causes it to matter. Congress did. By allowing an employer to designate a contribution as an "employer's contribution" and defer taxation of that income until retirement, Congress both created an opportunity and left its exercise to the employer. As an economic matter, employers' contributions and employees' contributions are identical; they differ in name only. Under the tax law the name matters, and the employer picks the name.

Section 414(h)(2) gives governmental employers a second name to use, in order to achieve the same result. Its function is evidently to avoid hurdles of state law that might prevent governments from designating pension contributions as "employers'

contributions" and so deferring employees' tax. By "picking up" contributions, governments may both preserve their internal characterization of the contributions and achieve the tax benefits that private employers regularly do when they make "employers' contributions."

The employee is stuck with the employer's designation, no matter what it is. Until 1981 Illinois by statute called the contributions to the Judges' Retirement System employees' contributions. This remitted Judge Howell to the presumptive rule that the whole salary is taxable. We could not accept his argument that the state "picked up" his contributions even before 1982—because he never saw the money either before or after the new law and never has had any choice about its destination—without either reversing one of the most venerable principle of taxation (that he who earns the money pays the full tax) or disregarding the rule that permits the employer to designate a contribution as made by it or by the employee. Illinois made one choice for years before 1982, and now (using the right to "pick up" contributions) it has made another. Judge Howell is bound by both.

This exalts form over substance, no doubt. In tax, however, form and substance often coincide. The election between employers' and employees' contributions is nothing but form, and the new designation option in § 414(h)(2) simply continues the practice. A court must apply an empty distinction with the same fidelity as it applies any other. Congress may choose, if it wishes, to allow employers to control the tax consequences of pension contributions, and the selection of one device is neither better nor worse than another. "When we are dealing with statutory terms of art, the form-substance dichotomy is a false one. 'Substance' can only be derived from forms created by the statute itself. Here substance *is* form and little else; there is no natural law of reverse triangular mergers." Joseph Isenbergh, *Musings on Form and Substance in Taxation,* 49 U.Chi.L.Rev. 859, 879 (1982).

The designation has consequences. Taxes deferred are taxes reduced. Similarly the change in wages reported on the W–2 form affects the amount of income from which exclusions may be made, and it reduces the adjusted gross income from which deductions may be made. One tax effect breeds another. None of this matters. The outcome of this case follows from the employer's power to elect designations with tax effects for the employee. Before 1982 the designation in Illinois was that the contributions were made by the employee, and that is that.

AFFIRMED.