ARTHUR A. AND LAKAWANNA ALDERMAN, Petitioners v. COMMISSIONER INTERNAL REVENUE SERVICE, Respondent
Alderman v. Commissioner
Docket No. 42786-85.
United States Tax Court
T.C. Memo 1988-49; 1988 Tax Ct. Memo LEXIS 48; 55 T.C.M. (CCH) 86; T.C.M. (RIA) 88049; 9 Employee Benefits Cas. (BNA) 1562; February 16, 1988. R. Nicholas Burton, for the petitioners. David R. Reid, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1982 in the amount of $ 188. The sole issue is whether amounts withheld from petitioners' salary in 1982 and contributed to a pension plan were "picked up" within the meaning of section 414(h)(2)). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Arthur A. Alderman ("petitioner") and Lakawanna Alderman filed a joint Federal income tax return for their 1982 calendar year and resided in Decatur, Illinois, at the time they filed the petition in this case. During the year at issue, petitioner was a fireman employed by Decatur. Petitioner also served on the Board of Trustees ("Board") *51 of the Firemen's Pension Fund ("Fund"). Illinois law mandates that each fireman employed by municipalities such as Decatur be assessed 7-3/4 percent of his salary and that such percentage be deducted from each fireman's salary and contributed to the Fund. [2] The Board administers the Fund's compliance with state law. *52 Effective January 1, 1982, legislation was enacted in Illinois to enable municipalities to "pick up" firemen's contributions to the Fund. [3] In late 1981, petitioner became aware of this legislation (hereinafter referred to as the "Illinois pick-up statute") by reading a magazine article and attending a seminar for firemen, both of which outlined certain Federal income tax benefits obtainable if firemen's contributions to the Fund were picked up by the employing municipality. Petitioner learned that picked up employee contributions to a pension plan are not currently taxable to an employee until later distributed pursuant to the terms of the pension plan. The article and seminar gave petitioner the impression that "approval" from the Internal Revenue Service ("Service") was a prerequisite for the implementation of an effective pickup of employee contributions for Federal income tax purposes. *53 Since neither petitioner nor any member of the Board was knowledgeable in Federal tax law, tax guidance was sought from the Service for determining a means of picking up such contributions. To this end and on behalf of the Board, petitioner contracted, in late 1981, the Service's offices in Decatur, Springfield, and Chicago, Illinois, to determine what steps were required to implement a pickup effective for Federal tax purposes. No Service office in Illinois that petitioner contacted was able to provide petitioner with the information he was requesting. In May of 1982, petitioner telephoned a Service employee in Washington, D.C., who, petitioner was informed, was familiar with the Federal tax ramifications of picked up employee contributions. Petitioner was apprised that the information sought by the Board regarding picked up employee contributions would be mailed to the Board. No information was ever sent in response to this inquiry. In November of 1982, in response to a second telephone inquiry, the Board was informed by the same Service employee that a City Council resolution, similar to a resolution passed by the Decatur City Council as a means of picking up employee contributions *54 to the Illinois Municipal Retirement Fund, [4] would effective a pickup of Decatur firemen's contributions to the Fund. At no time did any Service employee inform petitioner or any member of the Board whether or not prior Service approval was a prerequisite for an effective pickup for Federal tax purposes. On December 6, 1982, the Decatur City Council passed a resolution ("1982 resolution") to effectuate a pickup of firemen's contributions by providing in relevant part as follows: Section 1. That employee contributions to the respective retirement funds of the City as aforesaid shall be paid by the City on behalf of all the employees enrolled in said Funds. Section 2. That such payment shall be paid by reducing the amount of gross earnings payable to said employee by the amount of contributions and making payment of such amounts directly to the respective funds. Section 3. That such direct payment of contributions provided hereby shall be effective for all compensation paid to said employees beginning in January, 1983 or beginning *55 with the next full pay period succeeding receipt by the Director of Finance of a copy of a favorable ruling in regard to the application of said Section 414(h) whichever later occurs. On December 8, 1982, the Service received a ruling request from the Board seeking to determine the Federal tax treatment of Decatur firemen's contributions to the Fund that the Board was attempting to pick up. On March 1, 1983, the Board received a favorable ruling from the Service that employee contributions to the Fund were picked up by Decatur pursuant to section 414(h)(2) by virtue of the Illinois pick-up statute and the 1982 resolution. The ruling concluded that contributions picked up pursuant to the 1982 resolution were currently excludable from the employees' gross incomes until such time as such amounts are distributed to the employees. Subsequent to the passage of the 1982 resolution, the Decatur City Council became aware that the Service was sending notices of deficiency to Decatur firemen in which the Service was disallowing deductions from or exclusions to gross income representing the firemen's 1982 contributions to the Fund. To remedy shortcomings, if any, to the 1982 resolution *56 as it affected the 1982 taxable year, another resolution was passed by the Decatur City Council on June 17, 1985 ("1985 resolution"), and was made retroactive by its terms to encompass the entire 1982 calendar year. The 1985 resolution provides in relevant part as follows: Section 1. That the required Firemen and Policemen employee contributions to the respective Firemen's Pension Fund and Policemen's Pension Fund as aforesaid for all compensation earned during calendar year 1982 is hereby deemed to have been a responsibility of the City of Decatur and may be treated for income tax purposes as having been paid directly by the City of Decatur on behalf of the employees enrolled in said funds who deducted the same in computing 1982 adjusted gross income. Section 2. That the payment of employee contributions to said funds during 1982 shall be deemed to have been provided from a like reduction in the amount of gross earnings paid or payable to said employees. During 1982, Decatur deducted a total of $ 1,846.06 from petitioner's compensation and contributed this amount to the Fund (hereinafter sometimes referred to as "petitioner's 1982 Fund contributions"). Petitioner's 1982 Form *57 W-2, wage and Tax Statement, issued by Decatur, reflects compensation income of $ 23,831.69 unreduced by petitioner's 1982 Fund contributions. Petitioners excluded from gross income the 1982 Fund contributions on their 1982 joint Federal income tax return, claiming that those contributions had been picked up by Decatur. Respondent issued a notice of deficiency disallowing petitioners' exclusion of his 1982 Fund contributions and determined a deficiency in the amount set forth above. OPINION The purpose of the Illinois pick-up statute was to enable a municipality such as Decatur to grant a Federal tax deferral benefit to its employed firemen pursuant to section 414(h). [5]Section 414(h)(1) provides, inter alia, that amounts contributed to a section 401(a) pension plan ("pension plan") that are designated as employee contributions are not to be treated as employer contributions. Section 414(h)(2) provides an exception if a pension plan is established by the government of any state or political subdivision thereof. Pursuant to this exception, designated employee contributions to such a pension plan which are picked up by any employing unit are treated for Federal tax purposes *58 as employer contributions. The distinction between an employer and an employee contribution is important for Federal income tax *59 purposes as it affects the timing of inclusion in the employee's taxable income of those contributions. Employer contributions to a pension plan are not includable in an employee's income until the year or years the contributions are distributed or made available to the employee. Sec. 1.402(a)-1(a)(1)(i), Income Tax Regs. Employee contributions to a pension plan that are required by law and are contributed on behalf of the employee by the employer to such plan retain their character as currently taxable compensation unless a Code provision provides otherwise. Feistman v. Commissioner,63 T.C. 129, 133 (1974), affd. 587 F.2d 941 (9th Cir. 1979); Megibow v. Commissioner,21 T.C. 197 (1953), affd. 218 F.2d 687 (3rd Cir. 1954); sec. 61. Petitioner's 1982 Fund contributions are clearly employee contributions. [6] Therefore, those 1982 Fund contributions can only be treated for Federal tax purposes as excludable employer contributions if they are picked up by petitioner's employing municipality, *60 Decatur. The Code does not define the term "pick up." The Conference Report, in describing the tax treatment of picked up contributions, states as follows: However, some State and local government plans designate certain amounts as being employee contributions even though statutes authorize or require the relevant governmental units or agencies to "pick up" some or all of what would otherwise be the employee's contribution. In other words, the governmental unit pays all or part of the employee's contribution but does not withhold this amount from the employee's salary. In this situation the portion of the contribution which is "picked up" by the government is, in substance, an employer contribution for purposes of Federal tax law, notwithstanding that for purposes of State law the contribution may be designated as an employee contribution. [Emphasis added.]
See H. Rept. 93-807, 93d Cong., 2d Sess. 145 (1974), 1974-3 C.B. 236, 380. In Howell v. United States,775 F.2d 887, 888 (7th Cir. 1985), the Seventh Circuit, to which an appeal of this case lies and the precedent of which we are bound to follow, [7] had *61 occasion to consider an issue similar to the issue presented herein. In interpreting the above-quoted passage from the Conference Report, the Seventh Circuit stated that a requirement "that there be 'no withholding' from salary would be the same thing as traditional 'employers' contributions.'" Howell, supra at 888. Yet, section 414(h)(2) and the Conference Report clearly contemplate that designated employee contributions, when picked up, are merely "treated as" employer contributions. To resolve this inconsistency, the Seventh Circuit interpreted a pickup as used in section 414(h)(2) as requiring that the employer designate those employee contributions which are to be treated as employer contributions. Such designation effectuates a pickup for purposes of section 414(h)(2). In essence, Howell defines a pickup as a designation by the employer that employee contributions are to be considered employer contributions for Federal tax purposes. Petitioners argue that Decatur made such a designation by virtue of either its 1982 *62 resolution or its 1985 resolution. Petitioners further argue that respondent is equitably estopped from disallowing petitioners' exclusion of the 1982 Fund contributions from their gross income. The 1982 resolution does not pick up petitioner's 1982 Fund contributions because by its very terms, it is not effective for the 1982 taxable year. [8] Accordingly, the 1982 resolution does not designate petitioner's 1982 Fund contributions as employer contributions and, therefore, does not effectuate a pickup by Decatur. The 1985 resolution, by its terms, retroactively designates petitioner's 1982 employee contributions as employer contributions. Petitioner argues that since tax legislation can be retroactively applied where there is no violation of due process, see Welch v. Henry,305 U.S. 134, 147 (1938); *63 Milliken v. United States,283 U.S. 15 (1931), Decatur can retroactively designate employee contributions as employer contributions and have such designation be effective for Federal tax purposes. If Decatur were permitted to retroactively redesignate contributions to state governmental pension plans for Federal tax purposes, the tax consequences of petitioner's 1982 Fund contributions for petitioners' 1982 taxable year could potentially change from year to year. Though such a city council resolution may be retroactively effective for state law purposes, giving retroactive effect to a city council resolution for Federal income tax purposes runs counter to the concept that Federal taxes are basically computed on the basis of annual accounting periods, not on a transactional basis. Burnet v. Sanford & Brooks Co.,282 U.S. 359 (1931); Hershey Foods Corp. v. Commissioner,76 T.C. 312 (1981); sec. 441. Accordingly, we do not give retroactive effect to the 1985 resolution and hold that it is not effective for Federal income tax purposes to retroactively designated petitioner's 1982 employee contributions as employer contributions. *64 Therefore, the 1985 resolution does not effectuate a pickup. We recognize that our holding is somewhat harsh in that the Board obviously intended to and had at its disposal the means necessary to effectuate a pickup, but because of complexity and confusion did not so effectuate a pickup. The Seventh Circuit in Howell, supra at 889, 890, stated on this issue: By allowing an employer to designate a contribution as an "employer's contribution" and defer taxation of that income until retirement, Congress both created an opportunity and left its exercise to the employer. As an economic matter, employers' contributions and employees' contributions are identical; they differ in name only. Under the tax law the name matters, and the employer picks the name. * * * The employee is stuck with the employer's designation, no matter what it is.
Petitioners' counsel presented their case ably and efficiently. Though we empathize with petitioners' predicament, Howell, supra, is controlling and we must hold as we do. Petitioners' last argument is that respondent is equitably estopped from disallowing petitioner's 1982 employee contributions because *65 Service employees in Illinois and Washington, D.C., contacted by telephone delayed until late 1982 in providing the Board with the tax advice that the Board was requesting. This delay by the Service, petitioners allege, likewise caused the City Council to delay passing a resolution until December 6, 1982. Petitioners' equitable estoppel argument is not novel to this Court. This Court has jurisdiction to apply the doctrine of equitable estoppel if the prerequisites for its application are present. See Boulez v. Commissioner,76 T.C. 209, 214-217 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Graff v. Commissioner,74 T.C. 743, 760-765 (1980), affd. 673 F.2d 784 (5th Cir. 1982); Schwartz v. Commissioner,40 T.C. 191 (1963); cf. Pesch v. Commissioner,78 T.C. 100, 130-131 (1982). We need not delve into the doctrine's several elements [9] but to say petitioners have presented no evidence that respondent made an erroneous statement of any fact to petitioner or the Board. We hold that the doctrine *66 of equitable estoppel is not here applicable. [9]
To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue. ↩
2. See Ill. Ann. Stat. ch. 108 1/2, para. 4-118.1 (Smith-Hurd Supp. 1987). As effective in 1982, Illinois law provided in relevant part as follows: [The Board shall have the powers and duties] [t]o assess each fireman, beginning January 1, 1976, 6 3/4% of salary, including longevity attached to the rank held by the fireman as established by the municipality appropriation ordinance, but not including 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or other cash benefit over and above the salary established by the appropriation ordinance, which sum is to be deducted and withheld from the pay or fees of each fireman so assessed. The deductions, together with all interest accrued or accruing thereon, shall be placed by the treasurer of the municipality as ex officio treasurer of such Board, to the credit of the pension fund, subject to the order of the Board.
Reprinted in Historical Notes, Ill. Ann. Stat. ch. 108 1/2, para. 4-124 (Smith-Hurd Supp. 1987). [T]there shall be deducted, beginning July 1, 1971, from each payment of salary to a fireman 1/2% of each such salary payment concurrently with and in addition to the salary deductions otherwise made for pension purposes, beginning January 1, 1976, the rate of such deduction shall be 1%.
Reprinted in Historical Notes, Ill. Stat. Ann. ch. 108 1/2, para. 4-109.1 (Smith-Hurd Supp. 1987). ↩
3. See current version codified at Ill. Ann. Stat. ch. 1008 1/2, para. 4-118.2 (Smith-Hurd Supp. 1987). As effective in 1982, this statute provided: Pick up of employee contributions. Each employer may pick up the fireman's employee contributions required by Section 4-124 for all compensation earned after December 31, 1981. If an employer decides not to pick up the contributions, the amount that would have been picked up under this Amendatory Act of 1980 shall continue to be deducted from compensation. If contributions are picked up they shall be treated as employer contributions in determining tax treatment under the United States Internal Revenue Code; however, the employer shall continue to withhold Federal and state income taxes based upon these contributions until the Internal Revenue Service or the Federal courts rule that pursuant to Section 414(h) of the United States Internal Revenue Code, these contributions shall not be included as gross income of the fireman until such time as they are distributed or made available. The employer shall pay these firemen's contributions from the same source of funds which is used in paying earnings to the firemen. The employer may pick up these contributions by a reduction in the cash salary of the firemen or by an offset against a future salary increase or by a combination of a reduction in salary and offset against a future salary increase. If employee contributions are picked up↩ they shall be treated for all purposes of this Article 4 in the same manner and to the same extent as employee contributions made prior to the date picked up. [Emphasis added. Footnotes omitted. Ill. Rev. Stat. ch. 108 1/2, para. 4-124.1 (State Bar Association Edition 1982).] 4. The Illinois Municipal Retirement Fund was a pension plan covering other state employees and overseen by a separate administrative body. ↩
5. Section 414(h) provides for the year at issue as follows: (h) Tax Treatment of Certain Contributions. -- (1) In general. -- Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed -- (A) to an employees' trust described in section 401(a), or (B) under a plan described in section 403(a) or 405(a),
shall not be treated as having been made by the employer if it is designated as an employee contribution. (2) Designation by units of government. -- For purposes of paragraph (1), in the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up↩ shall be treated as employer contributions. [Emphasis added.] 6. See n.2, supra.↩
7. Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971). 8. The 1982 Resolution states that it is effective only after the later↩ of the beginning of January 1983, or the pay period succeeding Service approval of the 1982 Resolution as a means of picking up employee contributions. Since 1982 is the only year before the Court, we do not address the tax consequences of this resolution for any other year besides 1982. 9. The traditional elements of equitable estoppel are: (1) a false representation or wrongful misleading silence; (2) an error originating in a statement of fact, not in opinion or a statement of law; (3) one claiming the benefits of estoppel must not know the true facts; and (4) some person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed. Piarulle v. Commissioner,80 T.C. 1035, 1044↩ (1983).