STEEL BALLS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steel Balls, Inc. v. Commissioner
Docket No. 13492-93R
United States Tax Court
T.C. Memo 1995-266; 1995 Tax Ct. Memo LEXIS 268; 69 T.C.M. (CCH) 2912; 19 Employee Benefits Cas. (BNA) 1583; June 15, 1995, Filed *268 Decision will be entered for respondent. For petitioner: Paul F. Christoffers. For respondent: Gregory J. Stull and Martha L. Hutzelman. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined that petitioner's Employee Stock Ownership Plan (ESOP) did not meet the section 401(a) [1] requirements for qualified status, with the consequence that its related trust is not exempt from income tax under section 501(a). Specifically, the Commissioner determined that petitioner violated section 401(a)(16) by contributing amounts to the ESOP that exceeded the contribution limits prescribed by section 415. This case is before us on a petition for a declaratory judgment under section 7476 and Rule 217. The parties filed a joint stipulation as to the completeness and correctness of the administrative record and submitted this case for determination under Rule 122. *269 Petitioner, Steel Balls, Inc., was incorporated as an Iowa corporation on May 5, 1986. Its primary business is wholesale clothing sales, and there does not appear to be any connection between its name and the nature of its business. At all times relevant it was wholly owned by the ESOP; its president and sole employee was David P. Mathison, who was the sole participant in the ESOP and thus, in effect, the sole owner of petitioner. The Steel Balls, Inc., Employee Stock Ownership Plan (hereinafter referred to, in combination with its related trust, as the Plan or the ESOP) was executed on June 10, 1986, to be effective May 5, 1986. The ESOP is a defined contribution plan. As indicated above, the Plan was at all times relevant the sole shareholder of petitioner. And, as also noted above, petitioner's sole employee, Mathison, was the sole participant in the Plan for the years at issue, the plan years ending on April 30, 1987, 1988, and 1989. On July 20, 1987, the IRS issued a favorable determination letter relating to the qualified status of the ESOP. On January 29, 1988, the Plan was amended, effective May 1, 1987. The favorable determination letter was revoked by a final revocation *270 letter dated March 30, 1993. The Plan provided that contributions would be made from petitioner's current or accumulated profits in an amount determined by petitioner's board of directors. The Plan contained an election whereby any eligible employee could reduce his compensation and have the amount of the reduction contributed to the Plan. This salary reduction component was intended to satisfy the requirements of section 401(k). During the plan year ending April 30, 1987, [2] the ESOP borrowed $ 59,840. It used these funds to purchase 59,840 shares of petitioner's stock. This was the initial purchase of stock, and the stock represented 100 percent of the ownership interest in petitioner. On March 2, 1988, the ESOP borrowed an additional $ 312,360. It used these funds to purchase an additional 70,056 shares of petitioner's stock. Both immediately prior to and immediately after this purchase, the ESOP owned 100 *271 percent of petitioner. During the plan year ending April 30, 1989, the ESOP borrowed an additional $ 245,000. It used these funds to purchase an additional number of shares of petitioner. The ESOP, both before and after this purchase of additional shares, continued to own 100 percent of petitioner. For the plan year ended April 30, 1987, the annual Return/Report of Employee Benefit Plan (Form 5500-C) filed by the ESOP showed income due to contributions in the amount of $ 60,000. This amount was shown as an employee contribution to the Plan. Petitioner's U.S. Corporation Income Tax Return (Form 1120) for its fiscal year ended April 30, 1987, claimed a deduction of $ 60,000 [3] for payments to a pension plan and a deduction of $ 60,000 for commissions. These commissions were paid to Mathison. *272 For the plan year ended April 30, 1988, the Form 5500-C filed by the ESOP reported income from contributions in the amount of $ 22,000. This amount was shown as an employer contribution. The ESOP also reported income from investments in the amount of $ 17,930. Petitioner's Form 1120 for its fiscal year ended April 30, 1988, claimed a deduction of $ 22,000 for payments to a pension plan and a deduction of $ 100,000 for commissions. These commissions were paid to Mathison. Petitioner's tax return also claimed a deduction of $ 17,930 for dividends paid under section 404(k) to the Plan. The ESOP's Form 5500-C for the plan year ended April 30, 1989, reported no income attributable to contributions. It did, however, show earnings from investments in the amount of $ 589,077. Petitioner's Form 1120 for its fiscal year ended April 30, 1989, claimed a deduction under section 404(k) for dividends paid to the Plan in the amount of $ 589,077. The amounts paid and deducted by petitioner, as reported on its Forms 1120, are summarized below: Year Commissions
Contributions
Dividends
Ended
To Mathison
To the Plan
Deducted 4/30/87
$ 60,000
$ 60,000
-0-  4/30/88
100,000
22,000
$ 17,930
4/30/89
-0-  -0-  589,077
*273 Petitioner did not show any amount on its Form 1120 for any of the years made part of the administrative record as paid to officers or employees. Despite this fact, both parties agree that the commissions paid to Mathison ($ 60,000 for the fiscal year ended April 30, 1987, and $ 100,000 for the fiscal year ended April 30, 1988) are compensation. There is nothing in the record to show that Mathison included any of the contributions ($ 60,000 for petitioner's year ended April 30, 1987, and $ 22,000 for petitioner's year ended April 30, 1988) in income on his personal income tax returns. As the basis for revoking the Plan's qualified status, the Commissioner stated in the final revocation letter that annual additions were made to the Plan in excess of the section 415 limits for the years ended April 30, 1987, 1988, and 1989, and that the excess contributions have remained in the Plan's trust, causing a continuing violation. Section 401(a) lists the requirements for qualification for a pension, profit-sharing, and stock bonus plan. Section 401(a) provides in part: (a) Requirements for Qualification. -- A trust created or organized in the United States and forming part of a *274 stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section -- * * * (16) A trust shall not constitute a qualified trust under this section if the plan of which such trust is a part provides for benefits or contributions which exceed the limitations of section 415.
For the plan year ending April 30, 1987, section 415 provided for a limitation on contributions as follows: (a) General Rule. -- (1) Trusts. -- A trust which is a part of a pension, profit-sharing, or stock bonus plan shall not constitute a qualified trust under section 401(a) if -- * * * (B) in the case of a defined contribution plan, contributions and other additions under the plan with respect to any participant for any taxable year exceed the limitation of subsection (c), * * * * * *
(c) Limitation for Defined Contribution Plans. -- (1) In general. -- Contributions and other additions with respect to a participant exceed the limitation of this subsection if, when expressed as an annual addition (within the meaning of paragraph (2)) to the participant's account, such annual addition *275 is greater than the lesser of -- (A) $ 30,000, or (B) 25 percent of the participant's compensation. (2) Annual addition. -- For purposes of paragraph (1), the term "annual addition" means the sum for any year of -- (A) employer contributions, (B) the lesser of -- (i) the amount of the employee contributions in excess of 6 percent of his compensation, or (ii) one-half of the employee contributions, and (C) forfeitures.
Section 415(c)(2) was amended by section 1106(e) of the Tax Reform Act of 1986 (TRA 86), Pub. L. 99-514, 100 Stat. 2085, 2424, effective for plan years beginning after December 31, 1986, TRA sec. 1106(i), 100 Stat. 2425, to include the entire employee contribution in the calculation of the annual addition. In order to calculate the applicable section 415 limit on contributions in this case, three different amounts must be known: The participant's compensation, the employer contribution, and the employee contribution. The amounts used by each party and the resulting calculation of the section 415 contribution limit for each year at issue are shown below: Year Ending April 30, 1987
Sec.
Participant Employer
Employee
Annual 415(c) Excess
Compensation
Contrib.
Contrib.
Add. Limit Contrib.
IRS
$ 60,000
$ 60,000
-0-  $ 60,000
$ 15,000
$ 45,000
Petitioner
120,000
-0-  $ 60,000
30,000 [1]
30,000
-0-  Year Ending April 30, 1988
IRS
100,000
22,000
-0-  [2] 67,000
25,000
42,000
Petitioner
122,000
-0-  22,000
22,000
30,000
-0-  Year Ending April 30, 1989
IRS
-0-  -0-  -0-  [3] 42,000
-0-  42,000
Petitioner
-0-  -0-  -0-  -0-  -0-  -0-  *276 In addition to the calculation shown above, the Commissioner recharacterized the $ 17,930 and $ 589,077 dividends paid to the Plan for the plan years ended April 30, 1988, and April 30, 1989, respectively, as additional employer contributions, increasing the amounts of the section 415 violations. We must decide the correct amount of the participant's compensation, the employee contribution, and the employer contribution. This involves determining the correct treatment of the $ 60,000 and the $ 22,000 elective deferral made by the participant in the plan years ending April 30, 1987, and April 30, 1988, respectively, and whether the amounts paid as dividends were properly recharacterized by the Commissioner as employer contributions. The Elective Deferrals
Petitioner argues that the amounts of the elective deferrals, which the participant chose not to receive as cash but rather to have contributed to the ESOP, are includable in participant compensation and are employee contributions. The Government's position is that participant compensation includes only amounts included in the participant's gross income, thereby excluding pretax contributions to a qualified pension plan. *277 The Commissioner argues that amounts contributed pursuant to an employee's election to defer compensation are employer contributions. As explained below, we find that the statute, the relevant legislative history, and the applicable regulations support the Commissioner's view. Section 415 does not define the term "employer contribution." However, section 402(a)(8) [4] provides: Cash or deferred arrangements. -- For purposes of this title, contributions made by an employer on behalf of an employee to a trust which is a part of a qualified cash or deferred arrangement (as defined in section 401(k)(2)) shall not be treated as distributed or made available to the employee nor as contributions made to the trust by the employee merely because the arrangement includes provisions under which the employee has an election whether the contribution will be made to the trust or received by the employee in cash. [Emphasis supplied.]
*278 The statute thus unequivocally provides that contributions to a qualified cash or deferred arrangement pursuant to an employee's election, like the contributions now at issue, are not employee contributions. This rule is restated in section 1.402(a)-1(d)(2)(i), Income Tax Regs.: Elective contributions as defined in section 1.401(k)-1(g)(3) for a plan year made by an employer on behalf of an employee pursuant to a cash or deferred election under a qualified cash or deferred arrangement, as defined in section 1.401(k)-1(a)(4)(i), are not treated as received by or distributed to the employee or as employee contributions. * * * [Emphasis supplied.]
Furthermore, section 1.401(k)-1(a)(4)(ii), Income Tax Regs., provides: Except as provided in paragraph (f) of this section, [dealing with the correction of excess contributions] elective contributions under a qualified cash or deferred arrangement are treated as employer contributions. Thus, for example, elective contributions are treated as employer contributions for purposes of sections 401(a) and 401(k), 402, 404, 409, 411, 412, 415, 416, and 417.
The regulations make clear that the contributions at issue *279 are employer contributions. Petitioner argues that the fact that the employee chooses whether to receive cash or to have a contribution made is enough to characterize the contribution as an employee contribution. This argument is contrary to the above-quoted statutory provision (section 402(a)(8)) and the relevant regulations set forth above. Petitioner argues, however, that section 402(a)(8) was not meant to require the characterization of elective deferrals as employer contributions. Petitioner contends that section 402(a)(8) was intended merely to preclude the inclusion of the elective deferral in gross income under the constructive receipt doctrine. Petitioner's interpretation is contrary to the plain meaning of the statute. Section 402(a)(8) clearly states that contributions such as those at issue "shall not be treated as distributed or made available to the employee nor as contributions made to the trust by the employee". If Congress had intended the meaning petitioner would place on the statute, it could have stopped after "shall not be treated as distributed or made available to the employee". Congress did not choose to do so. It included the prohibition against treating *280 the contribution as an employee contribution, and that prohibition must be given meaning. Petitioner goes on to argue that the language in section 402(a)(8) referring to employee contributions was meant only to insure that participants were properly taxed on distributions from qualified plans when pretax contributions were made. Petitioner cites no authority for this position. Further, section 402(a)(8) applies "For purposes of this title" (emphasis supplied), the entire Internal Revenue Code. Petitioner's attempt to limit the language referring to employer contributions ignores this language. We find petitioner's position thoroughly unsound. Petitioner contends further that the foregoing regulations are constitutionally invalid when applied retroactively. However, petitioner does not rely upon the Fifth Amendment, the familiar basis for attacking the retroactive application of a tax measure on constitutional grounds. Rather, it relies upon the ex post facto provision of U.S. Const. art. I, sec. 9, cl. 3. The point is so far-fetched and unsound that we do not deem it worthy of discussion as a matter of constitutional law. Moreover, provisions found in both sections *281 1.401(k)-1(h)(3)(ii) and 1.402(a)-1(d)(3)(iii), Income Tax Regs., allow a taxpayer, for years beginning after December 31, 1979, and before January 1, 1992, to make use of the rules in effect during that period when determining whether a plan was qualified during those years. However, petitioner has made no attempt to avoid retroactivity by relying upon any such prior year rules. Its constitutional argument sounds hollow and contrived. Petitioner also contends that the contribution for the plan year ending April 30, 1987, is an employee contribution because a section 414(h)(1) designation was made. Section 414(h)(1) states: (h) Tax Treatment of Certain Contributions. -- (1) In general. -- Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed -- (A) to an employees' trust described in section 401(a), or (B) under a plan described in section 403(a), shall not be treated as having been made by the employer if it is designated as an employee contribution.
Petitioner argues that listing the contribution for the plan year ending April 30, 1987, as an employee contribution on the ESOP's Form 5500-C *282 is enough to satisfy the section 414(h)(1) designation requirement. We disagree. Petitioner provides no authority setting forth the requirements of a section 414(h)(1) designation. However, we find it essential that, if such a designation is to be made, then the contribution in question must be consistently treated as an employee contribution. This requires, at a minimum, that the amount of the contribution be reported to the participant as taxable compensation, see section 6051(a). The line on which a contribution is reported on a Form 5500-C is not enough to change what is in substance an employer contribution into an employee contribution. We are aware of this Court's holding that it is the employee who is bound by the employer's designation of a contribution as either an employee or an employer contribution. Foil v. Commissioner, 92 T.C. 376, 423 (1989) (citing Howell v. United States, 775 F.2d 887 (7th Cir. 1985)), affd. 920 F.2d 1196 (5th Cir. 1990). Our holding here is not inconsistent with Foil. There the Court was presented with an argument by the taxpayer that amounts which *283 could have been designated by the employer as an employer contribution, and therefore not included in the taxpayer's gross income, should be considered so designated. The Court rejected this argument, deciding that the employee is bound by the employer's designation. In our opinion that holding was not meant to apply to the situation where in substance an employer contribution was made but the contribution was then identified as an employee contribution on a Form 5500-C. Mathison, the sole employee of petitioner, did not include the amount of the contribution in his personal income, as would be required if the amount were properly designated an employee contribution. Petitioner presented no evidence that it reported the amounts of the contributions to Mathison as taxable compensation. Further, the terms of the Plan limit the amount of employee contributions for any employee to $ 2,000 per year. The amounts at issue could not be contributed by the employee, and any designation to the contrary would therefore be invalid. Section 414(h) was enacted by section 1015 of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, 925. The House Ways and *284 Means Committee, in the report accompanying H.R. 12855 (Private Pension Tax Reform), [5] stated, H. Rept. 93-807, at 145 (1974), 1974-3 C.B. (Supp.) 236, 380: This provision [section 414(h)] provides that amounts that are contributed to a qualified plan are not to be treated as an employer contribution if they are designated as employee contributions. This provision gives effect to the source of the contributions, as designated in the plan. * * *
Congress did not intend that section 414(h) work a substantive change in the area of employee contributions. Rather, the intent of section 414(h) was simply to insure that, for purposes of the Federal tax law, the treatment of contributions would follow the designation made by the plan. This means the treatment of the contribution *285 for all purposes of the Federal tax law. Petitioner is not entitled to take the benefits of an employee contribution designation without accepting the burden (immediate inclusion in income by the participant) of the same. This is particularly true here where one person, David P. Mathison, was the sole employee of petitioner, as well as in substance its sole stockholder (through the ESOP), was in complete control of the entire enterprise, was free to place any label of his choice on any item, and was in full control of any relevant forms or returns submitted to the IRS. The primary difference between an employer contribution and an employee contribution is that an employee contribution is made with after-tax funds. The Congress that enacted section 414(h) recognized this difference. See H. Rept. 93-807, supra at 121, 1974-3 (Supp.) C.B. at 356. Congress did not intend that section 414(h) change the rule that employee contributions are made with after-tax funds. The record makes clear that petitioner, the ESOP, and the participant treated the contribution made for the plan year ending April 30, 1987, as an employer contribution in every way except the line on which it was *286 listed on the Form 5500-C. The burden of proving that a proper section 414(h) designation was made is on petitioner. That burden has not been met. The statute and the applicable regulations make clear that the contributions at issue were employer contributions. The fact that the participant chose whether to have the contributions made, pursuant to a qualified cash or deferred arrangement, is not enough to characterize the contributions as employee contributions. The fact that the ESOP characterized the first contribution as an employee contribution on its Form 5500-C is also not dispositive. Section 415(c)(3)(A) states: "In general. -- The term 'participant's compensation' means the compensation of the participant from the employer for the year." The regulations applicable to the Plan's first plan year at issue clearly state: (2) Items not includable as compensation. The term "compensation" does not include items such as -- (i) Contributions made by the employer to a plan of deferred compensation to the extent that, before the application of the section 415 limitations to that plan, the contributions are not includable in the gross income of the employee for the taxable *287 year in which contributed. * * *
Sec. 1.415-2(d)(2)(i), Income Tax Regs.[6] Because we have determined that the contributions at issue are employer contributions, it follows that they are not included in participant's compensation. Petitioner argues that the contribution is included in compensation through an employer election under section 414(s)(2). [7] Such an election under section 414(s)(2) is not available to petitioner. First, the employer election was first added as section 414(s)(3) by TRA section 1115(a), 100 Stat. 2452-2454. Section 414(s) was effective for plan years beginning after December 31, 1986, pursuant to TRA section 1115(b), 100 Stat. 2454. Therefore, the employer election included in *288 (current) section 414(s)(2) was not available for the first plan year at issue. Second, section 415(c) is not an "applicable provision". Section 415 makes no reference to section 414(s). Petitioner ignores the fact that section 414(s) applies *289 only for purposes of an "applicable provision", as defined in section 414(s)(4). Petitioner makes other arguments regarding the amount of participant compensation. We have considered them and find them to be without merit. Section 404(k) Dividends
For the plan year ending April 30, 1988, petitioner paid dividends to the Plan totaling $ 17,930. For the plan year ending April 30, 1989, petitioner paid dividends to the Plan totaling $ 589,077. Petitioner deducted these amounts in the applicable year pursuant to section 404(k). The Commissioner determined that these amounts represent additional employer contributions for the years in which paid. The Government relies on section 1.415-6(b)(2)(i), Income Tax Regs., which provides: For purposes of paragraph (b)(1)(i) of this section, the term "annual additions" includes employer contributions which are made under the plan. Furthermore, the Commissioner may in an appropriate case, considering all of the facts and circumstances treat transactions between the plan and the employer or certain allocations to participants' accounts as giving rise to annual additions.
The Commissioner determined that, on the facts presented *290 here, the amounts paid as dividends were not properly treated as Plan earnings, but were actually additional employer contributions. We begin by noting that petitioner has not challenged the validity of section 1.415-6(b)(2)(i), Income Tax Regs. Petitioner's argument is that the facts and circumstances do not warrant the reallocation the Commissioner proposes. We hold otherwise. Administrative actions by the Commissioner are entitled to a great degree of deference from the courts. As this Court has stated: When reviewing discretionary administrative acts, however, this Court may not substitute its judgment for that of the Commissioner. The exercise of discretionary power will not be disturbed unless the Commissioner has abused his discretion, i.e., his determination is unreasonable, arbitrary, or capricious. Whether the Commissioner has abused his discretion is a question of fact, and petitioner's burden of proof of abuse of discretion is greater than that of the usual preponderance of the evidence. [Citations omitted.]
Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 648 (1989). Petitioner has not met its heavy burden of showing *291 that the Commissioner's actions constituted an abuse of discretion. Section 404(k) provides a deduction at the corporate level for dividends paid to an employee stock ownership plan if the dividends are used for specific purposes. One of the allowable purposes under section 404(k)(2)(C) is the use of the dividend to repay a loan the proceeds of which were used to acquire employer securities. The dividends at issue were used to repay just such loans. The ESOP borrowed $ 59,840 during the plan year ending April 30, 1987, to purchase the initial shares issued by petitioner. On March 2, 1988, the ESOP borrowed an additional $ 312,360 to purchase an additional 70,056 shares of petitioner's stock. Finally, during the plan year ending April 30, 1989, the ESOP borrowed an additional $ 245,000 to purchase an additional number of shares in petitioner. The ESOP has at all times since the initial purchase of stock owned 100 percent of petitioner. If the ESOP were allowed to continue this pattern unchecked, it could purchase as many shares in petitioner as it chose, while at all times not affecting its ownership percentage. Petitioner could declare and deduct a dividend for whatever amount *292 the ESOP chose to borrow. And the funds would eventually come to rest for the benefit of Mathison, the ESOP's sole participant. [8] By characterizing the funds as a dividend, petitioner could contribute the full amount of its profits without any concern for the section 415 contribution limits. [9]
*293 Petitioner contends that the Commissioner's action is contrary to the purpose underlying section 404(k). Petitioner points to the legislative history of the applicable employee stock ownership plan provisions and argues that Congress intended such plans to serve as a source of financing for employer corporations. While Congress has chosen to provide special rules relating to employee stock ownership plans, that does not mean that it intended to sanction the efforts of the ESOP and petitioner. First, petitioner, upon whom the burden of proof rests, offered no evidence showing it was ever in need of any outside financing. Second, a loan to the ESOP was the financial equivalent of a loan to petitioner. The assets of the ESOP consisted solely of receivables from and stock in petitioner. Further, the terms of the trust agreement entered into by petitioner as part of the ESOP required that petitioner make sufficient contributions to the trust to enable the trust to pay any installment of interest or principal payable on any trust indebtedness. With these facts in mind, it is clear that the ESOP did not provide a source of independent financing to petitioner. Any lender, on these *294 facts, would look through the ESOP to the creditworthiness of petitioner. Neither party has cited any authority for the limits on the Commissioner's power to act under section 1.415-6(b)(2)(i), Income Tax Regs. We need not decide the limits of that authority here, because the Commissioner was clearly within the allowable range of discretion when the dividends paid the ESOP were recharacterized as employer contributions. Petitioner's further argument is that, if the section 401(k) component of the Plan is found to have violated the section 415 contribution limits, then only the section 401(k) component of the ESOP should be disqualified. Petitioner would have us leave the qualified status of the employee stock ownership plan intact. We decline to do so. We agree with the Government that the regulations cited by petitioner in support of this proposition are not applicable to the situation at hand. Further, the recharacterized dividends were not shown to be paid to the section 401(k) component and represent employer contributions to the employee stock ownership plan. Therefore, the entire Plan is properly disqualified. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner's fiscal year and the Plan's plan year both ended on April 30 for the years at issue.↩
3. In each of the three corporate tax returns made part of the administrative record, petitioner described itself as a cash basis taxpayer. In the Form 5500-C for the year ended April 30, 1987, the Plan showed contributions totaling $ 60,000, with a receivable in the amount of $ 43,700. The full amount ($ 60,000) of the contribution was deducted by petitioner on its Form 1120. It would appear, however, that the entire $ 60,000 was not paid by April 30, 1987. This pattern repeats itself for the year ended April 30, 1988. However, both parties have proceeded as if the full amount of the contribution was made in the year shown on the Form 5500-C. As the propriety of the deduction taken by petitioner (a cash basis taxpayer) is not before us, we will also proceed as if the full contribution was made in the year shown on the Form 5500-C.↩
1. One-half of the employee contribution.↩
2. $ 45,000 (prior year excess contribution) plus $ 22,000 (current year addition).↩
3. $ 42,000 prior year excess contribution.↩
4. Sec. 402 was amended by sec. 521(a) of the Unemployment Compensation Amendments of 1992, Pub. L. 102-318, 106 Stat. 290, 300-310. The above-quoted language is currently found in sec. 402(e)(3).↩
5. This legislative history is equally applicable to sec. 414(h). See Foil v. Commissioner, 92 T.C. 376, 420, n.25 (1989), affd. 920 F.2d 1196↩ (5th Cir. 1990).
6. This regulation was modified for years beginning on or after Jan. 1, 1987; see T.D. 8301, 1990-1 C.B. 99; T.D. 8361, 1991-2 C.B. 310. The above-quoted language is currently found in sec. 1.415-2(d)(3), Income Tax Regs.↩
7. Sec. 414(s) as applicable to the year ending April 30, 1988, reads in part as follows: (s) Compensation. -- For purposes of any applicable provision -- (1) In general. -- Except as provided in this subsection, the term "compensation" has the meaning given such term by section 415(c)(3). (2) Employer may elect to treat certain deferrals as compensation. -- An employer may elect to include as compensation any amount which is contributed by the employer pursuant to a salary reduction agreement and which is not includible in the gross income of an employee under section 125, 402(a)(8), 402(h), or 403(b). * * * (4) Applicable provision. -- For purposes of this subsection, the term "applicable provision" means any provision which specifically refers to this subsection.↩
8. While the funds were immediately used to repay loans, the effect of this financing was to provide petitioner a deduction for principal payments on the loans used to capitalize petitioner, without any immediate income recognition by either the ESOP or the participant. This increased the value of the stock held by the ESOP (for the participant's benefit) by the value of the income tax savings.↩
9. We note that sec. 404(k)(2) provides the Secretary the power to disallow any deduction taken under sec. 404(k) if the Secretary determines that the dividend constitutes, in substance, an evasion of taxation. On brief, both petitioner and the Commissioner made reference to this provision. However, the corporate deduction is not now before us. The only issue before us is whether the ESOP was properly disqualified by the Commissioner.↩