Frank F. and Judith J. FOIL,
Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 89–4415.

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1990.

Brown, Circuit Judge, issued an opinion concurring in part and dissenting in part.

Katherine W. King, Theodore "Ted" L. Jones, Brian J. Prendergast, Jones & Amos, Baton Rouge, La., for petitioners.

William S. Rose, Jr., Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Ernest J. Brown, Washington D.C., Gary R. Allen, Chief, Appellate Section, Janet Kay Jones, William F. Nelson, Chief Cnsl., IRS, Stevens E. Moore, Atty., IRS., New Orleans, La., for respondent.

Before BROWN, JOLLY and DAVIS, Circuit Judges.

PER CURIAM:

The question presented by this appeal is whether amounts withheld from Judge Foil's salary in 1981 and contributed to the Louisiana Retirement Plan for Judges and Officers of the Court ("La. Judicial Plan") are taxable income for that year. The tax court, rejecting the taxpayer's arguments, held that the 1981 contributions are taxable as gross income.[1]

Foil asserts that his 1981 contributions are not taxable based on § 252 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) as amending § 457 of the Internal Revenue Code.[2] For reasons that will be discussed later, we concur in the

---

1. Currently, over seventy cases are pending in the Tax Court raising the identical issues considered by the Tax Court in this case. An oral agreement exists among the parties to abide by the final decision reached in this particular case.

2. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954.

decision of the tax court that Foil's contributions are not deductible under § 252 of TEFRA or § 457, although we reach this conclusion on different grounds. Finally, Judge Foil falls back on § 414(h)(2) (the "pick-up provision") in order to prevent taxation of his 1981 contributions to the La.Judicial Plan. Finding that the tax court correctly determined that Judge Foil's contributions are not exempt from taxation under the provisions of § 414(h)(2), we affirm.

### Background

In 1946, the Louisiana legislature had established the Louisiana State Employees' Retirement system (LASER), a retirement plan benefitting certain State officers, employees, and their beneficiaries. La.R.S. 42:541–720.21. Under the terms of this retirement plan, each employee-participant contributes seven percent of his/her earned compensation (employee contributions) each payroll period. Each State agency contributes an additional nine percent of the employee's earned income (employer contributions) into the plan. Each month the employing agency pays to the LASER Board of Trustees the combined sums from the employees contributions (amounts withheld) and the employer contributions.

During 1981, the Board of Trustees administered a plan which was tax-qualified under § 401(a) of the IRS and which included a trust exempt from tax under § 501(a).[3] The Louisiana Plan is thus a funded,[4] qualified plan including a trust exempt from tax under § 501.[5] Sections 401(a), 402(a), and 501(a) provide the following advantages for taxpayers: (1) taxable plan *benefits* are not includible in gross income until distributed or made available to the employee; (2) employer contributions are generally deductible in the year for which the contribution was made; and (3) the trust required as a funding medium for § 401(a) plans is exempt from income taxation. The participant may not, under ordinary circumstances, deduct their employee contribution from gross income.[6] *United States v. Basye*, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973).

Louisiana adopted Article V, § 23 of the Louisiana Constitution of 1974 directing the Louisiana legislature to establish a new

---

**3.** Stipulated by both parties, Stipulations of fact, Tax court op., paragraph 40.

**4.** A funded arrangement refers to deferred compensation that is contributed to a trust or is used to purchase an annuity or other types of insurance contracts. If the deferral represents an employer's unsecured promise, not represented by a note, to pay compensation for current services at some time in the future, and if the employee uses the cash method of accounting (virtually always), the amount promised is not includible in the employees gross income until received or made available. (Rev.Rul. 60–31). Standard Federal Tax Reports, § 2656A.55 (1990). United States Master Tax Guide, § 723 (1990). In other words, deferred compensation in an unfunded plan refers to payments made by the employer *after* the services for which compensation is being made have been completed. Deferred compensation in a funded retirement plan means that the employer's contributions in a qualified plan, although generally deductible for the year made under § 404(a), are generally taxable to the employee only when distributed or made available to him under § 402(a).

**5.** § 401 et seq. contains the rules for determining whether an employees' pension, profit-sharing, or annuity plan is a "qualified" plan or trust. A participant in a tax-qualified employee plan is not required to include his/her employer's contributions into income until the plan's benefits are distributed to the participant. This delayed reporting of income decreases the taxpayer's tax liability during the year that the contribution is made, and delays taxing until his/her income is lower, i.e. the retirement years. The employer, however, can deduct his/her contribution to the trust or plan in the year that it is made. The taxpayer is therefore taxed at a lower rate providing more spendable income during the retirement years. In contrast, if a plan is contributory (involving employee contributions), the participant may not ordinarily deduct or exclude his/her own contributions to the plan, whether or not the plan is tax-qualified (some exceptions irrelevant to this case exist).

**6.** Gross income means all income from whatever source derived, including ... (1) Compensation for services, including fees, commissions, and similar items; (2) Gross income derived from business; (3) Gains derived from dealings in property; (4) Interest; (5) Rents; (6) Royalties; (7) Dividends; (8) Alimony and separate maintenance payments; (9) Annuities; (10) Income from life insurance and endowment contracts; (11) Pensions ... 26 U.S.C. § 61.

retirement system for judges and court officers, resulting in the enactment of La. R.S. 13:11–26.[7] Under § 13:11, the judges and court officers listed in § 13:13 [8] are eligible to become members of LASER if the *option* granted by La.R.S. 13:14 is exercised within the 120 days allotted. Foil exercised his option to become a member of the new Louisiana Judicial retirement system and remained a member of this plan in 1981. After becoming a member of this plan, Foil's contribution was mandatory and he did not have the right to receive these contributions directly.

Respecting relative employee/employer contributions, the retirement system established for judges and court officers under La.R.S. 13:11 et seq. differs from the benefits and obligations of the LASER system in the following way:

| | JUDICIAL | LASER |
|---|---|---|
| EMPLOYEE CONTRIBUTION (%): | | |
| Required by R.S. 42:651A | 7 | 7 |
| Required by R.S. 13:18 | 4 | |
| TOTAL EMPLOYEE CONTRIBUTION | 11 | 7 |
| EMPLOYER CONTRIBUTION (%): | | |
| Required by R.S. 42:651A and 13:18 | 9 | 9 |
| TOTAL COMBINED CONTRIBUTION | 20 | 16 |

As the above indicates, the La. Judicial Plan requires a larger withholding from the employees' salary than those withheld under LASER; otherwise, the plans are essentially the same.[9] Foil's 11% contribution, along with the contributions of all other Judicial Plan participants, was submitted to LASER by a check drawn on the judiciary department's account and made payable to LASER. All funds, both employer and employee contributions, are commingled and pay investment, administrative, or benefit costs. La.R.S. 42:652.[10]

The Louisiana legislature passed Act 843, enacting La.R.S. 42:697.12 in 1982 that allowed the various Boards of the public retirement systems, including LASER, to adopt "pick-up" plans by which the employees' contribution to the retirement system would no longer be included in gross income for federal income tax purposes.[11]

7. La.R.S. § 13:11:
Anything in R.S. 42:553 to the contrary notwithstanding, the *judges and court officers* set forth in § 13 of this Part shall be eligible to become members of the Louisiana State Employees' Retirement System and obtain credit in and transfer credit to said system, as set forth herein, if the *option* hereinafter granted is exercised within the time hereinafter set forth.

8. The La. Judicial plan includes all Justices of the Louisiana Supreme Court, and the judicial administrator of the supreme court and his deputy or deputies, Judges of the court of appeals, district courts, civil and criminal district and juvenile courts of various Parishes, and judges of any parish court now existing or hereafter created in the State. La.R.S. § 13:13.

9. The tax court held that the Louisiana legislature intended to establish and did in fact enact a separate retirement plan for the State judiciary through La.R.S. 13:11 et seq., as distinguished from the provisions of La.R.S. 42:541 et seq. (LASER). This issue was not appealed by the respondent and there is no compelling basis on which to dispute this finding.

10. La.R.S. 42:652 requires that the employee contributions be credited to the Employees' Savings Account. La.R.S. 42:653 requires that the employer contributions be credited to the employer's Accumulation Account. When the member retires, his/her accumulated contributions are credited to the Retirees' Annuity Reserve. La.R.S. 42:654. These procedures are accounting functions. In actuality, all employer and employee contributions are commingled in the Title 42 Trust and are either invested or used to cover benefits.

11. La.R.S. 42:697.12 provides as follows:
(B) Each board may adopt a plan whereby the employees' contributions to the retirement system shall not be included in the employees' gross income for computation of the taxes under the provisions of the United States Internal Revenue Code. The plan shall provide that the employer pay the employees' share of the contributions directly into the system. The contributions shall be treated as employer contributions only for the purposes of the Internal Revenue Code.
(C) After adoption of the plan by the board, the employer shall pay the amount of the

The Board of Trustees of LASER resolved to adopt a pick-up plan on August 10, 1983, to be effective January 1, 1984.[12] The proposed resolution satisfied the IRS requirements for a pick-up plan. The procedures for withholding employee contributions from the participating judges and the transfer of these amounts to LASER did not change after the pick-up provision became effective.

District Judge Foil was elected to the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana in May of 1976. In 1982, Foil and his wife timely filed their 1981 joint income tax return. Foil had contributed 11% of his gross income to the La.Judicial Plan in 1981. In 1983, Foil filed an amended return claiming a refund of an amount representing his perceived 1981 tax overpayment. The IRS allowed the Foil's refund, but in 1984, reversed its grant of the refund and determined a deficiency of like amount. Foil filed a petition for redetermination of the deficiency.

*The Pick-up Provision*

■ Section 414(h) was enacted in 1974 to enable the federal government to provide certain State and local governmental employees with a benefit for *federal income* tax purposes. Section 414(h)(1)[13] provides that the amounts contributed to a plan qualified under § 401(a) may not, for tax purposes, be treated as employer contributions if they are designated by the employer as employee contributions.[14] Section 414(h)(2), however, provides an exception to this rule for employees of state and local governments.[15] It allows contributions to government plans, which are designated as employee contributions, to be treated as employer contributions if the government agency "picks up" the contributions. In fact, the statute is mandatory: if the contributions are designated as employee contributions but are "picked up," the contributions shall be treated as employer contributions. Our task in this case, therefore, is straightforward: we must determine whether Judge Foil's contested

---

contribution by a reduction in the salary of the employee or an offset ... These funds shall be paid from the source of funds which is used in paying earnings to the employee ... (D) The employer shall continue to withhold federal and state income taxes based upon these contributions until the Internal Revenue Service or the federal courts rule that pursuant to Section 414(h) of the Internal Revenue Code, the contributions made under this section shall not be included in the gross income of the employee and once approved, the contributions shall not be included as gross income until such time as the funds are distributed or made available.

12. The LASER board adopted the following plan by resolution on August 10, 1983, to be effective on January 1, 1984:

(1) All contributing employers of the System shall be notified that effective January 1, 1984, those portions of employees' salaries which are designated as employee contributions shall be paid directly to the System by the employer ...

13. Section 414: (h) Tax Treatment of Certain Contributions.—

(1) In general.—Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed—(A) to an employees' trust described in section 401(a), or (B) under a plan described in section 403(a) or 405(a), shall not be treated as having been made by the em-

ployer if it is designated as an employee contribution.

14. An employer who establishes a pension plan for its employees often contributes all funds to the plan on top of the employees' stated salaries. Similarly, the employer may contribute part of the funds in addition to the employee contribution that is withheld from the employees salary. These "employer contributions" are not taxable income for the employee until the plan pays benefits to the employee. 26 U.S.C. §§ 401(a), 403, 501(a). Withholdings from the employee's salary, however, are "employee contributions" and are part of the employee's current taxable income. Thus, the tax consequences of the distinction is significant. The tax on employ*ee* contributions is levied immediately, while the tax on employ*er* contributions is deferred until the pension is dispersed (and the discounted present value of the deferred tax is less than the value of tax paid today).

15. Section 414(h)(2) provides:

(2) Designation by units of government.—For purposes of paragraph (1), in the case of any plan established by ... any State or political subdivision thereof ... where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.

contributions were "picked up" by the State.

To decide whether and when Judge Foil's contributions were "picked up," we must first determine what is meant by the term "pick up." We start, of course, by looking to the language of § 414(h)(2). Unfortunately, the statute is absolutely blank on what is meant by the term "pick up."

The legislative history of § 414(h)(2) does little to supplant this omission. The House Ways and Means Committee Report on § 414(h)(2), H.Rept. 93–807 (1974) U.S.Code Cong. & Admin.News 1974, p. 4639, 1974–3 C.B. (Supp. 236, 380), describes "pick up" in cursory and non-legal terms:

> [S]ome State and local government plans designate certain amounts as being employee contributions even though statutes authorize or require the relevant governmental units or agencies to "pick-up" some or all of what would otherwise be the employees' contribution. In other words, the governmental unit pays all or part of the employees' contribution but does not withhold this amount from the employees salary.

The relevant language is the last sentence; in effect it describes the term "pick up" to mean that the governmental employer pays the contribution to the pension plan without withholding the contributions from the employees' salary. Presumably this means that the employer pays the pension contribution over and above the employees' stated salary.[16] Whether this is a defining characteristic of "pick ups" is less than clear. It is clear, however, that the legislative history does not provide a precise and comprehensive definition of "picked up." We therefore must conclude that, like the statute itself, the legislative history is uninstructive.[17]

 Because the statute is silent and the legislative history is, at best, incommunicado on when § 414(h)(2) is applicable, we next look to the Commissioner's interpretation. We recognize that IRS Revenue Rulings do not have the force of law, and are not binding on this court. *Stubbs, Overbeck & Associates, Inc. v. United States*, 445 F.2d 1142, 1146–47 (5th Cir.1971). Accordingly, we will disregard a Ruling if the Ruling conflicts with the statute it supposedly interprets, with the statute's legislative history, or if the Ruling is otherwise unreasonable. *See Brook, Inc. v. Commissioner*, 799 F.2d 833, 836 n. 4 (2nd Cir. 1986). Nevertheless, Revenue Rulings are otherwise "entitled to respectful consideration," *Groves v. United States*, 533 F.2d 1376, 1380 (5th Cir.1976), and are "to be given weight as expressing the studied view of the agency whose duty it is to carry out the statute." *United States Trust Co. v. Internal Revenue Service*, 803 F.2d 1363, 1370 n. 9 (5th Cir.1986); *Miami Beach First National Bank v. United States*, 443 F.2d 475, 478 (5th Cir. 1971). This is especially true when, as in the instant case, the statutory language is considered ambiguous. *See Gino v. Commissioner*, 538 F.2d 833, 835 (9th Cir.), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 587 (1976). Although we are not bound by the criteria promulgated in these Revenue Rulings, we give them special consideration because the statute and legislative history are so completely indefinite.

Thus we now turn to consider these Rulings. The question of when employee contributions are "picked up" for purposes of § 414(h)(2) is addressed in several IRS Rev-

---

**16.** However, as the Seventh Circuit noted in *Howell v. United States*, 775 F.2d 887 (7th Cir. 1985), this requirement in the legislative history would make a "pick up" plan identical to the straight forward "employer contribution" under section 414(h)(1). *Howell* is the only other federal circuit court to address whether a state must make a formal designation that government employees are covered by a "pick-up" plan.

**17.** Although the legislative history suggests that a "pick-up" plan is characterized by the govern-

mental unit or agency paying all or part of the employees' contribution and not withholding this amount from the employees' salary, this description has been discarded by the IRS. *See* Rev. Rul. 81–35, 1981–1 Cum. Bull. 255, Rev. Rul. 81–36, 1981–1 Cum. Bull. 256. Nevertheless, we note that the legislative history, to the extent that it offers us any guidance, indicates that Judge Foil's contributions were not "picked up" in the contested years because the contributions were being withheld from his salary at that time.

enue Rulings. *See, e.g.,* Rev.Rul. 81–35, 1981–1 C.B. 255, and Rev.Rul. 81–36, 1981–1 C.B. 255. These Rulings establish that the governmental employer must satisfy two criteria to have its employees' contributions "pick up" under § 414(h)(2): (1) it "must specify that the contributions, although designated as employee contributions, are being paid by the employer in lieu of contributions by the employee"; and (2) it cannot allow the employee the option of choosing to receive amounts directly instead of having them paid by the employer to the pension plan. It is only the first of these criteria that is questioned in this case.

We are persuaded that the Commissioner's first criteria in Rev.Rul. 81–35 is reasonable and, in fact, necessary. Congress apparently recognized that private employers and governmental employers do not share the same interests and concerns in the characterization of their respective contributions to employee pensions plans.[18] State governments may not wish to, or indeed may not be able to, grant their employees the federal tax break by effectively lowering employee stated salaries in order to designate the pension contributions as one made by the employer. For example, in *Howell, supra,* the State of Illinois had an apparent state constitutional prohibition against lowering a state judge's salary. In addition, state and local governments may be under legal restraints, political or competitive pressures, or requirements of established pay schedules, to pay their employees certain salaries, and thus be restrained from reducing the face amount of these salaried in order to designate that the contributions to pension plans were made by the employer. Moreover, in some situations the government employer was faced with a statute that expressly designated all contributions to state pension plans as employee contributions when in fact some contributions were made, not by the employee, but by the state, over and above the employee's salary.

Congress obviously intended § 414(h)(2) to enable governmental employers to get around these restraints precluding to state and local government employees the tax benefit that was easily available to private employers. Given, however, the sparse and enigmatic language of § 414(h)(2), Congress could only have intended for the IRS to clarify and set the requirements for determining when pension contributions are "picked up."

In carrying out this assignment, we find that the Commissioner's adoption of a formal designation requirement is reasonable. In the first place, we find that there is a need for it. For example, because of the frequent "mixed signals" as to the source of the contributions in "pick up" plans, e.g., a state statute requiring contributions to come from employees but an appropriations statute making the contribution in lieu of the employee contributions, a formal employer designation resolves the question of what tax treatment the contributions are to receive. The formal designation requirement simplifies and settles a confused situation and effectively says to the governmental employer, "If you wish to allow your employees the benefit of a tax exemption on pension plan contributions, you may make a designation pursuant to § 414(h)(2) and we will treat the contribution as an employer contribution; we will thus ignore all contradictory rules, regulations, statutes or indications to the contrary *if* you will tell us to do so." Granting the govern-

---

**18.** In this respect we would clarify the reasoning of the Seventh Circuit in *Howell.* The Seventh Circuit has correctly noted that, as far as the *private* employer is concerned, the difference between employ*er* and employ*ee* contributions is more form than substance:

> The distinction between 'employers' contributions' and 'employees' contributions' to qualified pension plans is almost wholly nominal. It is a matter of indifference to an employer whether it pays $30,000 salary to the employee plus $3,000 to a pension plan on the em-

ployee's behalf, or instead $33,000 to the employee, of which it sends $3,000 to a pension plan. In either event the employee receives $30,000 at once and $3,000 in deferred compensation, and the employer may deduct the whole $33,000 as an ordinary and necessary business expense. 26 U.S.C. § 404.

*Howell v. United States,* 775 F.2d 887 (7th Cir. 1985). For the reasons we note in our opinion, we do not believe that this describes the situation confronting governmental employer.

ment employer this option in this manner addresses the situation in a reasonable way.

Further, we find that having the governmental employer make a designation is reasonable because neither the statute nor the legislative history indicates that the governmental employer should have no choice in the characterization of the contributions. The designation requirement thus preserves in the employer the ultimate determination as to how contributions will be reflected in the wages of its employees, i.e., either as salary or above and beyond salary.

Additionally, we are persuaded that the Commissioner's designation requirement is reasonable because it effects the intent of the statute in a nonburdensome manner. This requirement is, as illustrated in the Louisiana case before us, a simple procedure. In accepting the Commissioner's point of view, we are also influenced by the fact that the IRS Ruling is consistent with the overall statutory scheme of § 414(h) which gives effect to the designation of the employer. Finally, we are convinced that when we find that an IRS ruling is fair and reasonable, it is usually wise policy for the court to accept that position; to do so lessens the confusion that results from "creative" approaches by a host of federal courts. We therefore hold that governmental employers must formally designate that the contributions to the pension plan are employer contributions as a prerequisite to applying § 414(h)(2).

■ Having thus determined what is required for employee contributions to be "picked up" by a governmental employer, we next turn to whether Louisiana "picked up" Judge Foil's 1981 contributions. The answer, unfortunately, is no. La.R.S. § 42:651 A(1)(c) and § 13:18 required Louisiana state judges who had opted to be covered by La.Judicial Plan to contribute 11% of their monthly income to the state pension plan. Thus in 1981, Judge Foil's judicial salary was $57,197.60, of which $6,291.72 was withheld and paid over to LASER. Judge Foil's W–2 Wage and Tax Statement for 1981 stated total wages as $57,197.60 for 1981, and his LASER Member's Account Statement showed that he contributed $6,291.72. After the Board of Trustees of LASER adopted the "pick up" resolution (to become effective on January 1, 1984), Judge Foil's W–2 form did not include as income the 11% contribution to LASER.[19] Consequently, a "pick-up" plan was not in place until January 1, 1984, when the Board of Trustees of LASER resolved to "pick up" the judges' contributions. This resolution is the first and only affirmation by the governmental employer that satisfies the Commissioner's requirements. We conclude that in this case, because Louisiana did not designate the subject contributions as employer contributions until 1984, Judge Foil was not entitled to the § 414(h)(2) tax benefit with respect to the contributions made in 1981.

### Section 252 Inapplicable

■ The tax court held that the La.Judicial plan is a "qualified" Judicial plan within the meaning of § 252 of TEFRA[20], and

---

**19.** The "pick up" provision had no effect on the statutory salary for Louisiana judges. Judge Foil's salary thus was not reduced by the Legislature.

**20.** § 252 of TEFRA provides:
SEC. 252. DEFERRED COMPENSATION PLANS FOR STATE JUDGES
 Subsection (c) of section 131 of the Revenue Act of 1978 is amended by adding at the end thereof the following new paragraph:
(3) DEFERRED COMPENSATION PLANS FOR STATE JUDGES.—
 "(A) In general.—The amendments made by this section shall not apply to any qualified State judicial plan.

"(B) Qualified state judicial plan.—For purposes of subparagraph (A), the term 'qualified State judicial plan' means any retirement plan of a State for the exclusive benefit of judges or their beneficiaries if—
 (i) such plan has been continuously in existence since December 31, 1978,
 (ii) under such plan, all judges eligible to benefit under the plan—
 (I) are required to participate, and
 (II) required to contribute the same fixed percentage of their basic or regular rate of compensation as judge,
 (iii) under such plan, no judge has an option as to contributions or benefits the exercise of

that § 457 is inapplicable to such plans.[21] Foil contends that Congress enacted § 252 of TEFRA in order to avoid the harsh result of the application of § 457(e)(1) to Qualified State Judicial Plans.[22] The "harsh result" of § 457(e)(1) that Foil seeks to avoid is the consequences of ineligibility under § 457 that requires the inclusion into income of deferred compensation in the first year in which there is no substantial risk of forfeiture.[23]

While this argument may have some merit in reviewing the early legislative history[24], this point seriously obscures the critical fact that the Louisiana Retirement Plan for Judges and Officers of the Court is *not*—although the tax court held that it is—a Qualified Judicial Plan within the meaning of § 252. Consequently, § 252 has no bearing on the present case.

Statutory interpretation begins with the language of the statute itself. If the language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Products Safety Comm. v. GTE Sylvania Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The La.Judicial Plan is not a Qualified Judicial Plan within the meaning of § 252 of TEFRA in two respects. First, § 252 clearly demands that the judicial plan must be for the *exclusive* benefit of judges or their beneficiaries. Sec. 252, § 131(c)(3)(B). La.R.S. §§ 13:11 and 13:13, in contrast, provide for membership in the judicial plan by *court officers* and judges.

Second, § 252, § 131(c)(3)(B)(ii)(I) defines the prerequisites of a Qualified Judicial Plan as a plan in which "all judges eligible to participate are *required* to participate...." The La.Judicial Plan, as enacted, granted every eligible member the *option* of becoming a member of the Louisiana State Employees' retirement system. La.R.S. 13:14. No language in § 252 indicates that the phrases "exclusively for judges" or "required to participate" denotes a different meaning than the one ordinarily ascribed to these words.

The legislative history likewise does not provide a safe haven of contrary intent for taxpayer's arguments. Senator Bentson introduced S. 1855 stating it "would add to the exceptions from § 457 State judicial plans that are the regular, exclusive, *mandatory* plan for service as an elected State

---

which would affect the amount of includible compensation,

 (iv) the retirement payments of a judge under the plan are a percentage of the compensation of judges of that State holding similar positions, and

 (v) the plan during any year does not pay benefits with respect to any participant which exceed the limitations of section 415(b) of the Internal Revenue Code of 1954."

**21.** Much confusion in this area results from the overlapping of similar terms in defining the beneficiaries of these enactments. "Qualified" plans are discussed under § 401(a) et seq. "Qualified" Judicial plans are defined in § 252 of TEFRA and are not to be confused with "qualified" plans as described in § 401(a), see § 252, footnote 19, supra. Eligibility and Ineligibility are defined in this context within the statutory framework of § 457, see § 457(a) and (e), text. Eligibility and ineligibility are also not to be confused with "qualified" under either §§ 401(a) et seq. or § 457.

**22.** Section 457(e) has since been amended and is contained in § 457(f).

**23.** Substantial risk of forfeiture means that the rights of an individual to compensation are conditioned on the future performance of substantial services by the person. § 457(f)(3)(B). It can also be understood as subjecting a taxpayer to taxation of the compensation at the time that the compensation vests in the taxpayer.

**24.** In describing the purpose behind H.R. 4881, Representative Pickle on November 4, 1981 stated: "The service [IRS] recognized at the time it promulgated the proposed § 457 regulations that there are State plans that are the regular retirement plan of the State but which do not qualify as an eligible State deferred compensation plan under the 457(b) structural requirements and which do not come within any of the exceptions to § 457(e)(1). Thus, participants in these plans would appear to be subject to the severe tax treatment requiring the inclusion of all such deferred compensation income in taxable income immediately upon vesting." 127 Cong. Rec. E 5125–5126 (daily ed. November 4, 1981).

judge." 127 Cong.Rec. S. 13561 (daily ed., Nov. 17, 1981) (emphasis added).[25]

A thorough review of the legislative history of § 252 reveals Congressional attentions were focused on a method of protecting very specific kinds of judicial plans from adverse treatment under 457—Qualified Judicial Plans. A Qualified Judicial Plan must meet these specific guidelines under § 252, guidelines that the La.Judicial Plan does not meet. Contrary to Foil's argument, no collision has occurred between Congressional intent and the language of § 252 warranting a contrary conclusion.

The tax court reached the conclusion that the La. Judicial Plan is a Qualified Judicial Plan (within the meaning of § 252) based on what appeared to the court to be a concession made by the Commissioner while the parties were engaged in an attempt to narrow the issues. The question addressed by the IRS was whether the judicial plan met the requirement that there be no option as to contributions. § 131(c)(3)(B)(iii). But as the IRS argued at trial and continues to contend on brief, it was merely a misstatement intended to refer the court to the "required to participate clause", rather than the "no option as to contributions" clause.[26] The concession adopted by the tax court that the La.Judicial Plan is a Qualified Judicial Plan so seriously deviates from the plain language of § 252 and the clear intent of Congress, it is a serious undermining of statutory interpretation. To memorialize this misstatement violates the clear language of the statute and the precise concerns of Congress and sets precedential value to a conclusion that defies logic.[27] Since the La.Judicial Plan is not a Qualified Judicial Plan, we do not reach the question of what § 252 accomplishes or fails to accomplish for Qualified Judicial Plans.

### Section 457

Having dispensed with § 252 of TEFRA, we now turn to § 457 in order to determine what its implications are for the taxpayer's contributions under the facts of this case. Section 457 originated out of Congressional concerns for certain State and Local Government Retirement plans that appeared to receive harsh treatment as a result of Proposed Income Tax Regulation § 1.61–16.[28] Prior to this, the concept of deferred compensation had preserved a certain degree of coherency, partly through the IRS's statements regarding the application of the constructive receipt and cash equivalent doctrines to nonqualified compensation plans as set forth in Revenue Rule 60–31.

Into this relatively calm body of knowledge, the Commissioner of the Internal Revenue Service interjected Proposed Income Tax Regulations sec. 1.61–16 on Feb. 3, 1978, 43 Fed.Reg. 4639 (1978).[29] Congress reacted expeditiously against these proposed regulations, perceiving a serious threat to the established retirement plans of many state and local government employees. Consequently, Congress enacted §§ 131 and 132 of the Revenue Act of 1978

---

**25.** Senator Bentson (of Texas) introduced § 1855. The Texas Judicial Plan was the regular, exclusive, mandatory plan for Texas judges. The La. Judicial Plan has since become mandatory.

**26.** Compare § 131(c)(3)(B)(iii) to § 131(c)(3)(B)(ii)(I) of the Revenue Act of 1978. The ease with which confusion can arise from the lengthy numbering and lettering of § 131 of the R.A. and § 457 is self-evident.

**27.** Courts are in no way mandated to accept stipulations by either or both parties or apparent concessions that fly in the face of the law. To do so would place the courts in the intolerable position of embracing falsehoods for the benefit of procedural acquiescence.

**28.** Proposed Income Tax Regulation § 1.61–16 provides:

 If ... payment of an amount of a taxpayer's basic or regular compensation fixed by contract, statute, or otherwise (or supplements to such compensation such as bonuses or increases in such compensation) is, at the taxpayer's individual option, deferred to a taxable year later than that in which such amount would have been payable but for his exercise of such option, the amount shall be treated as received by the taxpayer in such earlier taxable year.

**29.** These proposals emanated from a review of the deferred compensation area by the Internal Revenue Service.

(§ 131 functioning merely to enact § 457 of the Internal Revenue Code).[30] The major purpose of §§ 131 and 132, and § 457 by incorporation, was to prevent implementation of the IRS's proposed regulations (§ 1.61–61) and rectify the uncertainty created by these unwelcome proposals.[31] The portions of § 457 relevant to this controversy provide:

PART D—DEFERRED COMPENSATION

SEC. 131. DEFERRED COMPENSATION PLANS WITH RESPECT TO SERVICE FOR STATE AND LOCAL GOVERNMENTS.

(a) IN GENERAL.—Subpart B of Part II of subchapter E of chapter 1 (relating to taxable years for which gross income included) is amended by adding at the end thereof the following new §:

SEC. 457. DEFERRED COMPENSATION PLANS WITH RESPECT TO SERVICE FOR STATE AND LOCAL GOVERNMENTS.

(a) YEAR OF INCLUSION IN GROSS INCOME.—In the case of a participant in an eligible State deferred compensation plan, any amount of compensation deferred under the plan, and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant or other beneficiary.

(b) ELIGIBLE STATE DEFERRED COMPENSATION PLAN DEFINED.—For purposes of this section, the term 'eligible State deferred compensation plan' means a plan established and maintained by the State—. . . .

(2) which provides that (except as provided in paragraph (3)) the maximum that may be deferred under the plan for the taxable year shall not exceed the lesser of—

(A) $7,500, or

(B) 33⅓ percent of the participant's includible compensation . . .

(6) which provides that—

(A) all amounts of compensation deferred under the plan,

(B) all property and rights purchased with such amounts, and

(C) all income attributable to such amounts, property, or rights, shall remain (until made available to the participant or other beneficiary) solely the property and rights of the State (without being restricted to the provision of benefits under the plan) subject only to the claims of the State's general creditors. A plan which is administered in a manner which is inconsistent with the requirements of any of the preceding paragraphs shall be treated as not meeting the requirements of such paragraph as of the first plan year beginning more than 180 days after the date of notification by the Secretary of the inconsistency unless the State corrects the inconsistency before the first day of such plan year . . .

(e) TAX TREATMENT OF PARTICIPANTS WHERE PLAN OR ARRANGEMENT OF STATE IS NOT ELIGIBLE.—

(1) In General.—In the case of a plan of a State providing for a deferral of compensation, if such plan is not an eligible State deferred compensation plan, then—

---

**30.** H.R.Rep. No. 1445, 95th Cong., 2nd Sess. 52, 53 (1978), U.S.Code Cong. & Admin.News 1978, pp. 6761, 7090, 7091.

**31.** The General Explanation of the Revenue Act of 1978 describes the reasons for enactment of § 457 stating:

Reasons for change—The Congress believed that the regulations concerning nonqualified deferred compensation plans involving an individual election to defer compensation proposed by the Internal Revenue Service on February 3, 1978, if adopted in final form, would have had a serious impact upon the employees of many States and localities. If adopted, the regulations would have prohibited employees of State and local governments from participating in nonqualified, *unfunded* deferred compensation plans as a means of providing tax-deferred retirement income. General Explanation of the Revenue Act of 1978, H.R. 13511, 95th Cong.; Public Law 95–600, prepared by the staff of the Joint Committee on Taxation, pages 66–68, Mar. 12, 1979. (emphasis added).

(A) the compensation shall be included in the gross income of the participant or beneficiary for the first taxable year in which there is no substantial risk of forfeiture of the rights to such compensation, and

(B) the tax treatment of any amounts made available under the plan to a participant or beneficiary shall be determined under section 72 (relating to annuities, etc.).

(2) EXCEPTIONS.—Paragraph (1) shall not apply to—

(A) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a)...

(3) DEFINITIONS.—for purposes of this subsection—

(A) Plan includes Arrangements, Etc. —The term 'plan' includes any agreement or arrangement.

(B) Substantial risk of forfeiture.— The rights of a persons to compensation are subject to a substantial risk of forfeiture if such persons rights to such compensation are conditioned upon the future performance of substantial services by any individual...."

[131] (c) EFFECTIVE DATE.—

(1) In general.—The amendments made by this section shall apply to taxable years beginning after December 31, 1978— ...

Under § 457, employees who provide services for a State or local government that has an *eligible* deferred compensation plan are able to defer the inclusion in income as long as the deferral does not exceed the prescribed annual limitations. Section 457 establishes specific guidelines that the State and local governmental plan must meet in order to attain eligibility status and partake of the tax advantage afforded such plans. For those that meet the requirements, § 457 allows exclusion of deferred compensation from income until it is paid or otherwise made available to the participant.

If the plan fails to meet the eligibility requirements under § 457(b), then the plan is an *ineligible* plan and the deferred compensation is includable in income as soon as there is no substantial risk of forfeiture. § 457(e)(1). Section 457(e)(2) however, excludes certain ineligible arrangements from the otherwise inevitable application of § 457(e)(1) and its unfavorable treatment. Section 457(e)(2) lists those plans that are excluded. A 401(a) trust which includes a trust exempt from tax under § 501(a) is among the list. The overall purpose of § 457, therefore, is to afford a narrowly defined group of State and local retirement plans some degree of retirement income protection if they are eligible plans as defined by § 457(b) and to exclude some ineligible arrangements from the otherwise harsh treatment of § 457(e)(1).

Section 457 on its face seems to embrace all State and local deferred compensation plans by dividing the plans into those that either meet the eligibility requirements or those that do not. In contrast, the legislative history of § 457 suggests that Congress adopted § 457 to provide certainty with respect to *non-qualified, unfunded* [32] deferred compensation plans that were maintained by State and Local governments only (of which the La. Judicial Plan is neither). The question thus becomes, does § 457 apply to *funded* arrangements such as the La. Judicial Plan?

### *Funded v. Unfunded Plans*

■ Section 457 lacks any explicit restriction of its reach to unfunded plans despite a pervasive concern for such compensation plans in the concurrent and subsequent legislative history.[33] The IRS argues that subsection (b)(6) "explicitly" re-

---

**32.** See footnote 4, supra.

**33.** Subsequent legislative history refers to § 457 as applicable to unfunded government retirement plans: H.R.Rep. No. 99–426, 99th Cong., 185 Sess. 698–701 (1986–3 Cum. Bull. (Vol. 2) 698–701); S.Rep. No. 99–313, 99th Cong., 2d Sess. 563–565 (1986–3 Cum. Bull. (Vol. 3) 563–

565); H.R. Conf. Rep. No. 99–841 (Vol. 2, 99th Cong., 2d Sess., II 397–400) U.S.Code Cong. & Admin. News 1986, pp. 4075, 4485–4488; Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1986. 652–654. In addition, numerous tax texts treat § 457 as related only to unfunded plans.

fers to unfunded plans as if to suggest that explicit referral is also tantamount to an explicit exclusion of all other plans. The word "unfunded" does not appear in the statute, however, subsection (b)(6) can be construed as a way of describing an unfunded plan. This does not alter the fact, however, that § 457 fails to confine its application to "unfunded" plans. Section 457(b) clearly defines the prerequisites of an eligible plan without in any way excluding funded plans from the application of § 457. Further, the definition of a "plan" provided in § 457(e)(3)(A) (ineligible plan treatment) "includes any agreement or arrangement."

Proposed Income Tax Regulation § 1.61–16, the originator of this controversy, does not shed much light on this issue.[34] The General Explanation of the Revenue Act of 1978 (enacting § 457) does furnish some insight into the kind of compensation that the drafters sought to protect:

> These deferred compensation plans typically involve an agreement between the employee and the State or local government, under which the employee agrees to defer an amount of compensation not yet earned. Frequently, these plans permit the employee to specify how the deferred compensation is to be invested by choosing among the various investment alternatives provided by the plan. (However, the employer must be the owner and beneficiary of all such investments and the employee or his beneficiary *cannot have a vested,* secured or preferred interest in any of the employer's assets.).

General Explanation of the Revenue Act of 1978. H.Rept. 95–1445, p. 53 (1978); S.Rep. 95–1263, p. 65 (1978); General Explanation of the Revenue Act of 1978, p. 68 (1979) (emphasis added).

This again refers to unfunded deferred compensation arrangements, unlike the La. Judicial Plan.

While the legislative history indicates a strong concern for unfunded State retirement plans, the drafters of § 457 did not exclude funded plans from the operation of § 457. By the terms of § 457, its provisions are applicable to deferred compensation plans of State and local governments. Therefore, we proceed to apply § 457 to the La.Judicial Plan in order to determine the consequences to such plans under the explicit language of the statute.

### The Transition Rules

■ The tax court agreed with the IRS that for the 1981 taxable year (1) the income exclusion is governed by section 131(c)(2) of R.A.1978, the transition rules, rather than section 457; and that (2) plans which are tax-qualified under section 401(a) including a trust exempt under section 501(a) are not eligible for deferrals under section 457 or the transition rules.

> The transition rules of § 457 state that: "... beginning after December 31, 1978, and before January 1, 1982, any compensation deferred under a plan of a State providing for a deferral of compensation (*other than a plan described in section 457(e)(2)*) and any income attributable to the amounts so deferred shall be includible in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant."

Section 131(c)(2)(A)(i) of the R.A. of 1978.

The La. Judicial Plan, as stipulated by the parties, was, or formed part of, a plan which was tax qualified under § 401(a) and is listed in § 457(e)(2). The transition rules do not control Foil's contributions in 1981 because the statute expressly eliminates "those plans listed in section 457(e)(2)" from its application.

### Judicial Plan Ineligible

■ Section 457 sets forth a concise list of cumulative prerequisites that define the requirements of an "eligible" plan under § 457(b). The La. Judicial Plan fails to conform to the eligibility requirements of § 457(b) for two reasons. The Judicial Plan fails to meet the eligibility requirement of § 457(b)(6) that requires that "all amounts of compensation deferred under

---

**34.** See footnote 24, supra.

the plan, all property and rights attributed to such amounts ... shall remain ... solely the property and rights of the State subject only to claims of the State's general creditors."

Louisiana R.S. 13:24 plainly provides that "[a]ny person covered by this Part who elects to become a member of the Louisiana State Employees' Retirement System shall be *immediately vested* with all the benefits, emoluments, and conditions of the system and also with the additional benefits provided by this Part." The funds held in the LASER trust belong to the members as beneficiaries, and are not the sole property of the State.[35]

Neither Title 13 (the Judicial Plan) nor Title 42 (LASER) establish the maximum deferral amount limits that is in any way consistent with the very specific requirements for deferral amount limits for eligibility under § 457(b)(2). Therefore, the plain language of § 457 rejects the La. Judicial Plan from eligibility status.

### Ineligible and Not Otherwise Exempt

Since the La. Judicial Plan falls within one of the exclusions to § 457(e)(1), the focus now becomes what is the treatment afforded such plans. Section 457(e)(2) states that paragraph (1) shall not apply to "a plan described in § 401(a) which includes a trust exempt from tax under § 501(a)." Paragraph (1) is clearly referring to paragraph (1) of § 457(e) which introduces the reader to the treatment of ineligible plans. Section (A) under paragraph (1) plainly sets forth the proposition that for ineligible plans, compensation shall be included into gross income when there is no substantial risk of forfeiture. This presents us with the issue of whether participants in excluded plans under § 457(e)(2) need not include deferred compensation into income as soon as there is no substantial risk of forfeiture, as the express language indicates; or as the tax court concluded, these excluded plans receive no treatment under § 457.

The Explanation of § 252 in TEFRA clarifies the treatment of ineligible, but excluded plans listed under § 457(e)(2) stating:

> If amounts deferred are subject to a substantial risk of forfeiture, then they are includible in the income of the participants in the first taxable year in which there is no substantial risk of forfeiture. This rule for the tax treatment of participants in an ineligible plan does not apply, however, if the tax treatment of a plan participant is governed by tax rules for the plan that are *set forth elsewhere* in the Code. For example, the rule does not apply if the ineligible plan is a qualified pension plan (section 401(a)).[36]

(Emphasis added).

This statement indicates that 401(a) plans, which include a trust exempt from tax under 501(a), are governed by the treatment furnished such plans under their respective Code provisions and not by the treatment of ineligible plans under § 457. In other words, if a plan is a 401(a) plan, the plan receives the ordinary treatment afforded such plans. If participants in the relevant plans do not have to include deferred amounts in gross income for the first taxable year in which there is no substantial risk of forfeiture, then they do not now, merely because they are "ineligible" plans under § 457(e)(1).

Although it is a fine distinction, it is inaccurate to state that excluded plans do not receive *any* treatment under § 457. Rather, § 457(e)(2) plans receive the treatment ordinarily provided by the Code "as set forth elsewhere", despite being ineligible plans under § 457. Section 457 does not provide a *means* by which Foil's contribution is nontaxable, but merely seeks to *protect* the advantages gained elsewhere in the Code.

### We Conclude

The treatment of 401(a) plans which include a 501(a) trust is discussed in

---

**35.** The Louisiana Court of Appeal for the First Circuit is in accord with this finding, though discussed in a differing context. See *La. State Employee's Retirement v. State,* 423 So.2d 73 (La. Ct. App. 1982), writ denied, 427 So.2d 1206 (La.1983).

**36.** Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324, § 252.

§§ 401(a), 402(a), 501(a), and 414(h). Sections 401(a), 402(a), 501(a) do not address the tax treatment of the individual employees' compensation. We have held, however, that § 414(h)(2), although generally providing an exception to the usual taxation of employee contributions, does not permit Judge Foil to deduct his contribution. Because the La. Judicial Plan is ineligible and not exempted in the Code, Judge Foil's 1981 contribution is therefore taxable.

AFFIRMED.

JOHN R. BROWN, Circuit Judge, concurring and dissenting in part.

I concur in all of the Court's opinion except the part "The Pick-up Provision." As our differences compel affirmances rather than a reversal, I respectfully dissent:

> Section 414(h)(2) lacks any specific explanation of what a "pick-up" plan is or how a State may go about establishing a pick-up plan, but it is clear that some action is necessary in order to establish such a plan. The legislative history clarifies these omissions:

> DESIGNATED CONTRIBUTIONS— ... This provision provides that amounts that are contributed to a qualified plan are not to be treated as an employer contribution if they are designated as employee contributions. This provision gives effect to the source of the contributions ... if the appropriate committees of the Congress were to report legislation regarding employee contributions under the Federal Civil Service plan so that the present employee's contributions would become employer contributions under the Federal Civil Service plan (and that legislation were to be enacted), then those contributions would constitute employer contributions to the plan, which would be excludable

from the employee's income when made. The same rule would apply to State and Local governmental plans which now designate contributions as employee contributions, if the appropriate governmental bodies change the provisions of their plans.

> *However, some State and local government plans designate certain amounts as being employee contributions even though statutes authorize or require the relevant governmental units or agencies to "pick-up" some or all of what would otherwise be the employees' contribution. In other words, the governmental unit pays all or part of the employees' contribution but does not withhold this amount from the employees salary. In this situation, the portion of the contribution which is "picked-up" by the government is, in substance, an employer contribution for purposes of Federal tax law, notwithstanding the fact that for certain purposes of State law, the contribution may be designated as an employee contribution.*[1]

A pick-up plan, by the terms of the above discussion, requires that the governmental unit or agency pay all or part of the employees' contribution but does not withhold this amount from the employees' salary. Under the IRS interpretation, § 414(h)(2) requires the employer to specify that the contributions, although designated as employee contributions, are being paid by the employer in lieu of contributions by the employee. The IRS also requires that the employee must not be given an option of receiving the contributed amounts directly instead of having them paid by the employer to the pension plan. The IRS does not require that the contribution be paid directly to the employee, i.e. not withheld from the employee salary.[2]

---

1. House Ways and Means Committee Report, H.Rept. 93–807 (1974), U.S. Code Cong. & Admin. News 1974, pp. 4639, 1974–3 C.B. (Supp. 236, 380).

2. Rev. Rul. 81–35, 1981–1 Cum. Bull. 255, Rev. Rul. 81–36, 1981–1 Cum. Bull. 256. According

to the conference report, the contribution is paid by the government but is not withheld from the individual's salary. Although this is another method of describing an "employer contribution", the IRS has established additional criteria for implementing a pick-up plan

It is clear from the above explanation that the State must have a "pick-up" plan in effect before the participants can take advantage of § 414(h)(2). It makes no difference how it is accomplished, but merely that the appropriate framework exist.

Before 1984, a single check was issued to LASER which contained all employer and employee-participant contributions made under the La. Judicial Plan, and the contribution was *mandatory*. Foil did not have the right thereafter to receive the contributions directly, thus satisfying the IRS's second criteria for a pick-up plan. After January 1, 1984, Foil's employer reported to the Federal government that it was making the contributions previously designated as being made by Foil, and reported his salary thereby reduced. When the pick-up provision was adopted by LASER, the participants W–2 forms showed a reduction in salary of the participating judges, although in reality, there was no effect on the statutory salary or the basic methodology of disbursing the contributions into the LASER trust.

Foil maintains that since there was no change in the manner in which the deductions or transferred contributions were made, the Louisiana plan satisfied the prerequisites of a "pick-up" plan within the meaning of § 414(h)(2) prior to Louisiana's formal enactment of § 42:697.12 and LASER'S adoption of its pick-up resolution. I am persuaded by this argument.

It is clear in reviewing the legislative history of section 414(h)(2) that the Congressional drafters sought to create and legitimate a fiction into a fact by allowing certain governmental employees participating in a pick-up plan to benefit for federal income tax purposes. Louisiana had established the framework of a "pick-up" plan prior to formally designating the amounts as "picked-up", as evidenced by the direct payment into the

fund by Foil's employer and the lack of any substantive procedural changes required by the IRS in order to effectuate the existence of a pick-up plan. There is nothing in the legislative history or the terms of the statute to indicate that a state statute or system which satisfies the Federal framework for a pick-up plan must also make a formal specification of that fact.

I am not persuaded by the reasoning of the IRS that the State must intervene in order for Congress to effectively grant its citizens a federal tax advantage. I further disagree with the holding in *Howell v. U.S.*, 775 F.2d 887 (7th Cir. 1985) that nominalism should control over substance. The court in *Howell*, addressing an identical argument, held that the contributions made prior to the employer's formal specification remained employee contributions for Federal tax purposes, stating:

> The employee is stuck with the employer's designation, no matter what it is. Until 1981, Illinois by statute called the contributions to the Judges' retirement System employees' contributions.... This exalts form over substance, no doubt. In tax, however, form and substance often coincide. The election between employers' and employees' contributions is nothing but form, and the new designation option in § 414(h)(2) simply continues the practice. A court must apply an empty distinction with the same fidelity as it applies any other.

*Howell*, 775 F.2d at 890.

I reject as unsound the proposition that the court must apply an empty distinction in this context with the same fidelity as it applies any other. Section 414(h) and its legislative history neither compels nor justifies the result sought by the IRS in this case. The drafters of § 414(h)(2) recognized that various State governments *already* designate such

which do not require that the contributions be paid to the employee, i.e. not withheld from the employees' salary. Since the distinction between withholding and nonwithholding does

not effect the IRS's recognition of a "pick-up" plan, in deference to the IRS, there is no reason that it should now.

contributions as employee contributions and sought to protect the State's designation for *State* income tax purposes.

As H.Rept. 93–807 clearly indicates, Congress was aware that some State and local government plans designate certain amounts as being employee contributions *"even though* statutes authorize or require the ... governmental units ... to 'pick up' some or all of what would *otherwise* be the employees contribution" (emphasis added). This and subsequent statements within § 414(h)'s legislative history reflect Congressional concern for pick-up plans; specifically, plans in which "the governmental unit *pays all* or part of the *employees contribution* but does *not withhold* this amount *from* the *employees* salary" (emphasis added). Further, H.Rept. 93–807 explicitly states that the "picked-up" portion is, *in substance,* an employer contribution for purposes of Federal tax law, *notwithstanding* the fact that ... for State law, the contribution may be designated as an employee contribution." This terminology indicates that Congress sought to protect the State's designation, while at the same time, piercing through this designation in order to grant these individuals a federal tax advantage. The reasoning behind the Seventh Circuit's "empty distinction" analysis requiring an employer designation has significance in many contexts of federal and state tax law, but not in the context of § 414(h)(2).

The statute and legislative history are silent concerning any requirement for a formal announcement by the State, rather focusing on the substance of the plan, not employer designations. The statute and legislative history omits any *requirement* that the State engage in a formal process of official designation for the purposes of § 414(h)(2) and federal income tax law by statutorily or otherwise announcing that they are actually paying the contribution.

I would not impose on the clear language of § 414(h)(2), a requirement mandating an affirmative legislative act by the States or governmental units without a clear indication from Congress that

such action was either an intended prerequisite of a pick-up plan or that it would serve any useful purpose. I also would not read into § 414(h)(2) prior IRS regulatory precedent regarding private pension plans since the legislative history and statutory language clearly establishes a benefit specifically directed toward State and local government employees and not private employees.

I therefore respectfully DISSENT.